UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

UNITED STATES OF AMERICA

                                                          **MEMORANDUM ORDER**

                                                          23-CR-00293 (JMA)(JMW)


         -against-


ADAM KAPLAN and
DANIEL KAPLAN,
---------------------------------------------------X

**A P P E A R A N C E S:**

Adam Toporovsky, Esq.
Anthony Bagnuola, Esq.
**United States Attorney's Office**
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
*Attorneys for Plaintiff*

Paul G. Scotti, Esq.
**United States Attorney's Office**
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
*Attorney for Plaintiff*

Eric M. Creizman, Esq.
**Morrison Cohen LLP**
909 Third Avenue, Fl. 27
New York, NY 10022
*Attorney for Defendant Adam Kaplan*

Michael Tremonte, Esq.
Brachah Goykadosh, Esq.
**Sher Tremonte LLP**
90 Broad Street, 23rd Floor
New York, NY 10004
*Attorneys for Defendant Daniel Kaplan*

Victor L. Hou, Esq.
David H. Herrington, Esq.
**Cleary Gottlieb Steen & Hamilton LLP**
One Liberty Plaza
New York, NY 10006
*Attorneys for non-party Cadwalader, Wickersham & Taft*

**WICKS,** Magistrate Judge:

Before the Court is Defendants Adam Kaplan and Daniel Kaplan's motion to compel (ECF No. 16) their former counsel, non-party Cadwalader, Wickersham & Taft ("Cadwalader"), to turn over files pertaining to Cadwalader's representation of Defendants prior to the commencement of this criminal action. The instant motion is prompted by Cadwalader's refusal to turn over the file based upon its assertion of a retaining lien for non-payment (ECF No. 16 at 1), and the issuance of an order in a related civil action that denied Defendants' motion to compel in that proceeding. In particular, Defendants demand that Cadwalader be ordered to produce the following: (i) Cadwalader's written communications with the SEC, the U.S. Attorney's Office, IHT Wealth Management, LLC, former clients of Defendants, other potential witnesses, counsel, and third parties; (ii)(a) Cadwalader's notes and memoranda to file of conversations with, presentations to, or interviews of those parties and (b) any documents shown or provided to those parties; (iii) documents the Defendants provided to Cadwalader that were not produced to the SEC in discovery; and (iv) documents that Cadwalader produced voluntarily to the U.S. Attorney's Office including forensic copies of that data (collectively, the "Cadwalader File"). (ECF No. 16 at 1-2; ECF No. 24 at 3.)

For the reasons that follow, Defendants' motion to compel (ECF No. 16) is denied.

## I. BACKGROUND

Defendants are defending a sixteen-count indictment that alleges conspiracy to commit wire fraud, wire fraud, investment advisor fraud, and four counts of money laundering. (ECF No. 1.)

The indictment was filed on July 18, 2023 and unsealed on July 25, 2023.  (ECF No. 1.)
Defendants appeared for an arraignment before the undersigned on July 25, 2023 and were released
with conditions.  (ECF Nos. 10, 17.)  One week later on August 3, 2023, Defendants filed the
instant motion to compel.  (ECF No. 16.)  Cadwalader filed its opposition on August 10, 2023.
(ECF No. 21.)  Defendants were then afforded the opportunity to submit a reply in further support
of their motion on or before August 15, 2023.  (Electronic Order Dated August 11, 2023.)  No reply
was filed.  Oral argument was held on August 21, 2023.[1]  (Electronic Order dated August 21, 2023.)
Subsequently, the parties were afforded the opportunity to submit supplemental responses on or
before August 25, 2023, and the parties took the Court up on that offer, *see* ECF Nos. 24
(Defendants), and 27 (Cadwalader).

Defendants were previously represented by Cadwalader in multiple matters involving the
conduct that ultimately gave rise to an investigation conducted by the U.S. Securities and Exchange
Commission ("SEC)", a parallel criminal investigation by the U.S. Attorney's Office which led to
this indictment, and an arbitration.  (ECF No. 35 at 1.)  The period of representation lasted for a
total of one year and three months.  (ECF No. 16 at 1 (Aug. 2021–Nov. 2022).)  In December 2022,
Defendants and Cadwalader parted ways due to an alleged breakdown in the attorney client
relationship stemming from a disagreement over billing and non-payment.  (ECF No.  21 at 1.)
Cadwalader, however, asserted a retaining lien on the Cadwalader File for the outstanding fees
owed, which are estimated at approximately $760,000 to over $1 million dollars.  (ECF No. 16 at
2.)

On June 12, 2023, Defendants initiated a civil suit in state court for legal malpractice and
breach of fiduciary duty, seeking fee forfeiture, return of legal fees expended and punitive damages.

---

[1] All references to "Oral Argument" are to the argument held on August 21, 2023, and all references to "Oral
Argument Tr." are to the transcript of the same which has been filed at ECF No. 26.

The *ad damnum* clause of the complaint includes a plea for the return of "a full copy of [Defendants'] legal file."  *See* Complaint, *Kaplan v. Cadwalader Wickersham & Taft, LLP*, No. 609236/2023 (Sup. Ct. Nassau County June 12, 2023) ("State Court Action"), NYCEF No. 13 at 28. That action remains pending, although with a motion to dismiss filed by Cadwalader on July 28, 2023.  *See id.* at NYCEF Nos. 3-8 and 11.  To date, no application for a provisional remedy (e.g., temporary restraining order or preliminary injunction) for return of the Cadwalader File has been made there.[2]

The SEC investigation culminated in a civil lawsuit filed by the SEC on March 3, 2023 entitled *United States Securities and Exchange Commission v. Kaplan*, No. 23-CV-01648 (JMA)(ARL) (E.D.N.Y. filed March 3, 2023) ("SEC Action") alleging investment adviser fraud charges.  In the SEC Action, Defendants took another bite at the apple and asked that court for some of the same relief they seek in the State Court Action, and now here, namely, return of the Cadwalader File.  That motion was denied by the Hon. Arlene R. Lindsay.  *See* Order Denying Mot. to Compel, *United States Securities and Exchange Commission v. Kaplan*, No. 23-CV-01648 (JMA)(ARL) (E.D.N.Y. Jul. 13, 2023) (ECF No. 35).[3]

Magistrate Judge Lindsay declined to compel Cadwalader to turn over the Cadwalader File on two grounds.  (ECF No. 35.)  As a threshold matter, she denied the motion since Defendants did

---

[2] It is not an uncommon practice in state court when seeking to compel return of files over the assertion of an attorney retaining lien that such motions are filed by way of an order to show cause seeking preliminary injunctive relief.  *See, e.g.*, *Wankel v. Spodek*, 767 N.Y.S.2d 429, 430 (App. Div. 1st Dep't 2003) ("Plaintiff thereafter sought, by order to show cause, to compel [counsel] to release the plaintiff's files[.]"); *Leeboo v. Cohan*, 2022 N.Y. Slip Op. 32469, 3 (N.Y. Sup. Ct. 2022) ("Plaintiffs' current counsel brought a motion by order to show cause seeking an order . . . requiring Plaintiffs' prior counsel to relinquish the case file requested[.]"); *Nat'l Grid Corporate Servs., LLC v. LeSchack & Grodensky, P.C.*, 973 N.Y.S.2d 552, 555 (N.Y. Sup. Ct. 2013) ("[A] preliminary injunction, ordering a law firm to turn over its files, is an equitable remedy[.]").

[3] All references to "ECF No. 35" in this Order are to docket entry 35 in the SEC Action, 23-CV-01648 (E.D.N.Y.).

not serve a subpoena on Cadwalader, and thus, the court lacked jurisdiction to enforce Defendants' discovery demand.  (ECF No. 35 at 1.)  Judge Lindsay also reasoned that in any event, since "any decision on the instant motion to compel could interfere or even conflict with the work of the state tribunal," the Court should abstain from deciding the motion. (ECF No. 35 at 2.)

No motion for reconsideration was filed, nor was an appeal taken from that Order.

## II.   DISCUSSION

Fast forward to the instant criminal case and motion, which marks Defendants' latest attempt to compel production of the Cadwalader File.  Defendants collaterally attack the rationale proffered by Judge Lindsay for denying their motion, and further argue that the criminal charges they now face -- which were not extant before – markedly change the landscape and require this Court to now compel return of the Cadwalader File in order to ensure Defendants' rights to a fair trial under the Sixth Amendment are protected.  In addition, Defendants heavily rely on and urge the Court to exercise its inherent powers as well as its authority pursuant to the All Writs Act.

Cadwalader, on the other hand, contends that the motion must be denied for several reasons including, once again, that Cadwalader is not within this Court's jurisdiction since it is neither a party nor counsel to a party in this criminal action (and never appeared in this criminal action). Furthermore, and fundamentally, Defendants failed to satisfy the elements of the All Writs Act, and in any event have not met the standard for overcoming a retaining lien as outlined in the seminal Second Circuit decision in *Pomerantz v. Chandler*, 704 F.2d 681 (2d Cir. 1983).

Each of these arguments is discussed in turn.  The Court first addresses whether Cadwalader is within the Court's jurisdictional reach -- which includes an exploration of the three potential bases to compel Cadwalader advanced by Defendants.  (ECF No. 16.)  Even assuming a basis to compel Cadwalader exists, the Court next considers whether Defendants have met the standard to overcome Cadwalader's assertion of a retaining lien and compel production of the Cadwalader File.

5

## A. Does the Court Have the Power to Compel Cadwalader?

### i.       The Court's Inherent Power

Defendants' jurisdictional anchor for their motion here is the Court's inherent power to manage (i) its docket and (ii) counsel who appear before it.  Defendants principally rely on *Kleiman*, a civil case, arguing that case recognizes the broad authority a court has over lawyers who appear before it.  *See Kleiman v. O'Neill*, No. 03-CV-3829 (ERK)(RLM), 2008 WL 5582453 E.D.N.Y. Dec. 30, 2008), *report and recommendation adopted*, Order (Feb. 4, 2009), ECF No. 108. The court there noted that courts have the "inherent power to manage their own proceedings and to control the conduct of those who may appear before them."  *Id*. at *4.  And this power "extends to the right to require attorneys to turn over their case files to their clients." *Id*. (citing *Tops Mkts., Inc. v. Quality Mkts., Inc.*, No. 93-CV-0302 (JE), 2001 WL 392082, at *4 (W.D.N.Y. Apr.4, 2001)).

In *Kleiman*, the plaintiff did not oppose her former counsel's attempt to withdraw as counsel of record but did aver that her former counsel had not returned her entire case file and had mishandled funds.  *Kleiman*, 2008 WL 5582453, at * 1.  The district judge granted the application to withdraw but referred the remaining issue over the case file and mishandling of funds to the Magistrate Judge Mann.  *Id*.  She recommended that the district judge decline supplemental jurisdiction over the fee dispute but noted that the dispute regarding the file need not suffer the same fate since the court's supplement jurisdiction was not required to reach that issue.  *See id*. at *4. Rather, the court utilized its inherent power to manage its docket and those before it to order former counsel to turn over any remaining boxes of files.  *Id*. at *5.

However, *Kleiman*, and the case it cites to -- namely *Tops Mkts.* -- share a common denominator:  unlike here, in each of those cases former counsel represented the party in those very cases.  *See Kleiman*, 2008 WL 5582453, at *1; *Tops Mkts.*, 2001 WL 392082, at *1 (noting that counsel from whom the case file was sought was trial counsel for the liability phase of the case).

This is not a distinction without a difference.  That is self-evident in the statement that federal courts have inherent power to "control the conduct of those who may *appear* before them [.]" *Kleiman*, 2008 WL 5582453, at *4 (emphasis added).  Not insignificantly, counsel has not provided any decision that relied on *Kleiman* to compel the return of case files outside the civil context or where counsel was not counsel of record in the case itself.  Cadawalader has never appeared as counsel of record in this criminal proceeding.

    **ii.    The All Writs Act**

      Defendants next nod to the All Writs Act, which vests federal courts with authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a). [4]  The Supreme Court "consistently has construed the All Writs Act to authorize a federal court 'to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'"  *Pennsylvania Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 40 (1985) (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977)).  The All Writs Act's arm has a far reach such that it indeed can extend far enough to reach non-parties.  *See United States v. Int'l Bhd. of Teamsters*, 266 F.3d 45, 50 (2d Cir. 2001) (noting that the All Writs Act "encompasses orders imposed against third parties to the extent such parties are poised to interfere with the implementation of a prior judicial order.").

      The All Writs Act is a source of extraordinary relief and is not ordinarily called upon for routine matters.  *See Pennsylvania Bureau of Corr.*, 474 U.S. at 43 ("Although the Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to

---

[4] The Court notes that Defendants' moving papers (ECF No. 16) make reference to the All Writs Act as the authority that allows the Court to effectuate their requested relief, but at Oral Argument Defendants placed much greater emphasis on the "inherent authority" of the Court as a basis to compel.  *See* Oral Argument Tr. at 4–6 ("I think the argument for the Court's exercise of its inherent power to manage its own proceedings is much stronger for a number of reasons, even putting aside the All Writs Act[.]").

issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate,"); *Chappell & Co. v. Frankel*, 367 F.2d 197, 199 (2d Cir. 1966) ("Traditionally, the prerogative writs [in the All Writs Act] have been reserved for extraordinary circumstances."); *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, No. 13-CV-6073 (PKC), 2013 WL 6171315, at *6 (S.D.N.Y. Nov. 25, 2013) ("This Court concludes that there is no basis for an extraordinary remedy to issue under the All Writs Act."), *aff'd*, 776 F.3d 126, 127 (2d Cir. 2015) (noting that the appellant "has not demonstrated an adequate basis for an extraordinary injunction pursuant to the All Writs Act"); *Shen v. United States*, No. 22-378, 2023 WL 3830481, at *1 (2d Cir. June 6, 2023) (summary order) ("A district court may issue a writ of error coram nobis pursuant to the All Writs Act, where extraordinary circumstances are present.").

Defendants' invocation of the All Writs Act under the circumstances here is dubious at best, and certainly is not presented under extraordinary circumstances.  First, Defendants point to no prior order or directive of this Court that has been ignored.  That is, an order is simply not needed or appropriate here to effectuate or enforce any prior court order.  *See Ass'n for Retarded Citizens v. Thorne*, 30 F.3d 367, 370 (2d Cir. 1994) ("By power of the All Writs Act, [a court] may require the compliance of nonparties in order to ensure that its legally-mandated directives are not frustrated."). *Au fond*, there is no prior mandate alleged to have been frustrated.

Second, the All Writs Act "invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law."  *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999) (finding the All Writs Act to be "out of bounds" since alternative remedies were available); *see also Pennsylvania Bureau of Corr.*, 474 U.S. at 43 ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.").  So, the question remains, do Defendants have

alternative remedies available so that resort to the All Writs Act is not necessary?  They certainly do.[5]

Defendants seek to compel production of the Cadwalader File which was generated during a *prior* representation and *not* during the pendency of this criminal action.  In the SEC Action, Judge Lindsay found that a decision on the motion to compel would interfere with the State Court Action because "it is clear that resolution of th[e] motion would require the Court to adjudicate the very issue before the state court – that being, Cadwalader's entitlement to a charging lien and to retain the Kaplan's legal file."  (ECF No. 35 at 1–2.)  Defendants do indeed have an alternative remedy available to them -- and one that they are actively pursuing in state court.  Indeed, they sued for that very relief (among other relief) months ago. Moreover, another possible avenue for Defendants was to renew their motion to compel in the SEC Action once the subpoena was served upon Cadwalader.  After all, the primary basis on which that motion was denied was the absence of a subpoena.  That obstacle appears to have been removed.  In sum, not one, but several avenues of relief remain available to Defendants and the Court finds there are not extraordinary circumstances presented that warrant or justify relief under the All Writs Act.  It is Defendants who charted their own procedural course.

### iii.     Sixth Amendment Rights

Defendants' assertion of and reliance on the Sixth Amendment, which appears to be premised on *United States v. Victor Teicher & Co. L.P.*, No. 88-CR-796 (CSH) 1990 WL 71487 (S.D.N.Y. May 25, 1990) ("*Teicher*"), does not alter this analysis.  Defendants alluded to the rights to counsel, effective assistance of counsel, and a fair trial at Oral Argument.  *See* Oral Argument at

---

[5] To be clear, the Court is not basing this ruling on application of abstention principles.  Rather, the Court takes into account the availability alternative avenues for relief to determine whether the All Writs Act should be invoked.

17. In their opinion, the Court is faced with serious constitutional concerns and is obligated to compel production of the Cadwalader File to ensure Defendants constitutional rights. No case or authority has been offered to support that argument in the context of compelling a case file from a prior counsel not before the court under circumstances presented like those present here.

In *Teicher*, the court stated that it directed trial counsel to turn over case files related to the trial phase of the case. *Teicher*, 1990 WL 71487, at *3. These files were of course necessary to avoid delay of the post-trial phase initiated by defendant with new counsel. *Id*. The court did not find any criminal cases with ongoing proceedings where counsel asserted and successfully enforced an attorneys' lien. *Id*. The only case the court found was *People v. Alvater*, a state court decision which, like *Teicher* involved former counsel that had appeared and represented the defendant in that very case. *See id*. (citing *People v. Altvater*, 355 N.Y.S.2d 736, 737 (Sup. Ct. 1974).

The *Teicher* court found that directing trial counsel to turn over the files guaranteed the defendant "the rights endowed him under the Sixth Amendment to the Constitution" and that "serious constitutional concerns are implicated in allowing an attorney's understandable interest in tactically litigating a fee dispute to take precedence over a defendant's right to a speedy resolution of criminal charges against him with the benefit of effective representation of counsel." *Id*. The court relied on the All Writs Acts as the basis for its directive but made only a cursory reference to the Act. *See id*.

That case, however, involved a wholly different factual sequence and procedural setting. There, it was trial counsel in that same case who filed a motion to compel the payment of fees by their former client, the criminal defendant. *Id*. at *1. Therefore, trial counsel was plainly within the Court's jurisdictional reach. The motion was also filed after trial at which defendant lost. The defendant was attempting to secure his case file for the post-trial phase of the case, having retained new counsel to that end. *Id*. The court observed that without the case file "containing the trial

transcripts, motions made in the case, copies of trial exhibits and things of that nature, post-trial proceedings would be greatly delayed." *Id.* at *3.  The defendant's need for the files in *Teicher* could not be more apparent: those files relate directly to the appeal.  Indeed, there is no question that work could not be adequately replicated and was essential to defendant's post-trial proceedings. Additionally, any delay would be highly prejudicial and particularized need was at its highest as defendant had already been found guilty.

The current posture of this case and the circumstances at hand are distinguishable, and the differences are palpable.  Cadwalader was former counsel, with its representation of Defendants terminated prior to the indictment -- not post-trial like in *Teicher*.  Cadwalader only assisted Defendants with the pre-indictment investigation, not with any part of the current matter such that Defendants' counsel is unable to effectively assist their clients.  Further, there is no trial scheduled, the speedy trial clock is presently excluded, and Cadwalader never appeared or represented Defendants in this criminal action.

Moreover, there are a number of ways that Defendants can protect their constitutional rights without resorting to legal process.  *See* discussion *infra* Section B.II.  Defendants cannot through their own action or inaction create the constitutional issue.  If the Cadwalader File was wholly unavailable to Defendants and there were no reasonable steps that Defendants could take to obtain it, the situation would be different.  But it is not.

The Court finds that given the lack of urgency, the myriad of options available to Defendants to obtain the Cadwalader File, and the information already available to Defendants or equally accessible to them and their counsel -- the decision not to compel non-party Cadwalader at this juncture does not offend the Sixth Amendment.  Therefore, unlike in *Teicher*, an order pursuant to the All Writs Act is not necessary to secure the Defendants' Sixth Amendment rights.

iv.     **The SEC Action Subpoena**

Defendants attach a copy of a Rule 45 subpoena that was issued to Cadwalader.  (ECF No. 16-1.)  The subpoena corrects the chief infirmity that plagued defendants' initial motion to compel in the SEC Action.  But that subpoena was issued in the SEC Action, and not here.  Moreover, it was issued pursuant to the Federal Rule of Civil Procedure 45 ("Rule 45") (ECF No. 16-1 at 3).  Rule 45 deals with the issuance of subpoenas in civil cases but makes no mention of enforcement in criminal cases.  *Compare* Fed. R. Civ. P. 45 (governing subpoenas in civil cases), *with* Fed. R. Crim. P. 17 (governing subpoenas in criminal cases).

At Oral Argument Defendants clarified that they are not relying on the Rule 45 subpoena as a basis of jurisdiction over Cadwalader for the relief sought in this action.  *See* Oral Argument Tr. at 16.  Accordingly, the issuance of the SEC Action subpoena is inconsequential as far as compelling production of the Cadwalader File in *this* case is concerned.


## B. Overcoming the Retaining Lien

Even if Defendants proffered a valid jurisdictional basis for compelling Cadwalader to produce the Cadwalader File, the question remains whether Defendants have made a sufficient threshold showing of entitlement to the Cadwalader File.

This issue was addressed in *Pomerantz v. Schandler*, 704 F.2d 681 (2d Cir. 1983), a case hotly contested by the parties at Oral Argument.  In *Pomerantz,* the Second Circuit reiterated that "[i]t is settled that an attorney may claim a lien for outstanding unpaid fees and disbursements on a client's papers which came into the lawyer's possession as the result of his professional representation of his client."  *Id*. at 683.  "The purpose of the lien is to assist the attorney in preventing a client from refusing or failing to pay charges justly due."  *Id*.  Moreover, "[t]he

attorney's lien cannot be disregarded merely because the pressure it is supposed to exert becomes effective." *Id.* (citation omitted).

However, the court held that where a "client has an urgent need for the papers to defend a criminal prosecution and will be seriously prejudiced by withholding of them but lacks the means to pay the lawyer's fee and disbursements" the court may exercise its discretion to order the papers released. *Id.* The court must "balance[] the conflicting interests" and set "reasonable conditions" for release if appropriate. *Id.* Notably, "[s]uch a release may be ordered, however, *only upon the client's making a clear showing* of the need for the papers, the prejudice that would result from denying him access to them, and his inability to pay the legal fees or post a reasonable bond." *Id.* (emphasis added).

*Pomerantz* involved a lien that the court deemed appropriately asserted. *See id.* Nonetheless, the Court finds the underlying rationale of *Pomerantz* to be persuasive in guiding the Court here where a case file is sought while the propriety of the retaining lien is being simultaneously litigated in separate action.[6] Further, whether the underlying rationale and the standard articulated in *Pomerantz* are of any relevance where an individual has already been indicted, forms the spot of bother on this prong of the motion.

Defendants are adamant that the inquiry set forth in *Pomerantz* is inapplicable since the court was only envisioning a world where, unlike here, the individual seeking to overcome a retaining lien had not yet been indicted. Cadwalader, on the other hand, argues that the *Pomerantz* court assumed that even where a defendant had been indicted, at minimum, the defendant had to

---

[6] Defendants' argument that the principles underlying a retaining lien are not implicated here because Cadwalader is a large, successful, and profitable law firm and prying its leverage over Defendants from it "poses no existential threat to the firm" (ECF No. 16 at 3) is of no moment. There is no recognizable exception to the right to assert a retaining lien that turns on the success or profitability of counsel or their firm, or the size of a firm. Defendants have not identified even one decision to support such a specious argument.

show an inability to pay the fees or post security pending resolution of the disagreement.  The latter explanation seems most apt as Defendants' reading cannot be squared with the text of the case.[7]

It is true that in *Pomerantz* the court noted there that there was only conclusory claims that the defendant "urgently needed" the papers to "defend against a criminal prosecution" since "[a]t the time of argument no indictment or information had been filed[.]"  *Id*.  In noting that the defendant was not facing indictment, the court certainly underscored the lack of urgent need for the papers -- but that is only one part of the formula.  The language used by the court indicates that it assumed that courts were to balance the relevant factors even where the defendant had been indicted.  Indeed, as the court stated:

> An exception to the foregoing may be made when the *client has an urgent need for the papers to defend a criminal prosecution* and will be seriously prejudiced by withholding of them *but lacks the means to pay the lawyer's fee and disbursements*; *in that event* the court *may* in its discretion, after balancing the conflicting interests, require the lawyer to release the papers on reasonable conditions.

*Id.* (emphasis added).

These general principles were stated under the assumption that there was already an urgent need to defendant against a criminal prosecution (*e.g.*, an indictment).  This conclusion is further supported by the court's observation after noting the absence of an indictment that:

> Assuming *arguendo* the existence of a particularized need for the papers, the record contains no information regarding the defendants' financial condition and specifically their ability to pay G & B's fees and disbursements or to post security pending any differences with respect to them. The district court erroneously rejected, without explanation or finding, G & B's request that a bond be posted.

---

[7] The Court also notes that although Defendants cited *Pomerantz* in their moving papers (ECF No. 16), nothing in their letter briefs assert this theory that the standard in *Pomerantz* is only applicable pre-indictment.  Rather, this reading of *Pomerantz* emerged for the first time at Oral Argument.  *See* Oral Argument Tr. at 13 (arguing, *inter alia*, that *Pomerantz* was "[n]ot an indicted case.").

*Id*. at 684.  Put differently, the court assumed that even in the presence of an indictment which satisfied the urgent need prong, the rest was still required.  That is, the defendant must still show, for example, the inability to pay or post security.

Defendants here fail to satisfy the three relevant factors articulated in *Pomerantz*, namely, (1) the urgent need (other than generalized statements of need), (2) the prejudice that would occur, and (3) their inability to pay fees or at least post security.  Defendants argue that their liberty interests are at stake in this case and then conclude that they "desperately need" the case file so that they can defend against the charges levied against them.  (ECF No. 16 at 21.)  No elucidation of that conclusion is found in their papers.  Toward that end, Cadwalader states that it withdrew as counsel in December 2022 and most of the information that Defendants seek is either stale (*e.g.*, communications or presentations made in 2021 or 2022), already contained in the records of the various actions (*e.g.*, interviews of former clients since those client's complaints led to the SEC Action and this action), or was provided by Defendants in the first instance and is therefore already within their possession (*e.g.*, documents provided by Defendants for production or withheld).  (ECF No. 21 at 3.)

At Oral Argument Defendants added a bit of paint to their canvas by explaining that, for example, internal memoranda and notes of conversations with witnesses that Cadwalader interviewed, which are likely to testify, inevitably contain exculpatory statements.  Further, Defendants stated that re-creating the investigation conducted by Cadwalader, as it suggests, is not a feasible alternative since the witnesses' minds have now been tainted by interactions with the government.  Nor would the government's *Brady v. Maryland* obligations or Fed. R. Crim. P. 16 discovery offer the same information since Cadwalader is unlikely to have produced much of it

under the cloak of attorney-client privilege and the work-product doctrine.[8]  *See also* ECF No. 12

(Order entered under Fed. R. Crim. P. 5(f) reminding prosecution of *Brady* obligations).

Cadwalader countered that it is not necessary that the Cadwalader File contains all

exculpatory statements, and that an equal inference can be drawn that there is material that is wholly

irrelevant or perhaps even unhelpful.[9]   Further, Defendants are being sued by some of those

witnesses, their former clients, in separate court cases in which Defendants can, *inter alia*, directly

obtain discovery the witnesses or request third-party subpoenas.  Additionally, the indictment

is sufficiently detailed and points Defendants' counsel to the focused areas they need to investigate,

whereas the information contained in the Cadwalader File resulted from Cadwalader's pre-

indictment representation of Defendants' while there was only a broad investigation in place.  Now,

according to Cadwalader, there is no longer a moving target.

The Court assumes for the purposes of this analysis that the particularized need is satisfied

given the filing of the indictment.  However, there remain two other obstacles.  First, given the

alternatives readily available to Defendants, denying their motion would not be the equivalent of

"denying [defendants] access" to the information they seek, and thus, Defendants must still

articulate prejudice.  *See Pomerantz*, 704 F.2d at 683.  *Id.* at 684.  Second, and perhaps the most

---

[8] Relatedly, there was a brief discussion at Oral Argument regarding the applicability of *Sage Realty*, and of Judge Paul G. Gardephe's discussion in *Gruss* of (a) whether *Sage Realty* holds water in federal court, and regardless, (b) to what types of documents the exception applies.  *Compare Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y.2d 30, 36–38 (1997) (holding clients do not have a presumptive right to documents "intended for internal law office review and use"); *with Gruss v. Zwirn*, 296 F.R.D. 224, 229 (S.D.N.Y. 2013) ("[N]otes made to record what a witness said during an interview are not the type of documents this exception contemplates.").  Defendants' supplemental letter was also largely dedicated to *Sage Realty*.  (ECF No. 24.)  However, the issue of whether certain categories of documents are protected from disclosure is not central to the Court's judgment denying the instant motion.

[9] Cadwalader was hesitant at Oral Argument to provide any further detail of the contents concerned, as it should be, of the attorney-client privilege.  The scope of any "at issue" waiver of the attorney client privilege is not before this Court, but rather may become germane in the state court legal malpractice case.

significant obstacle that remains is Defendants' failure to address the "inability to pay legal fees or post a bond" factor.

Cadwalader represents that despite the assertion of its lien, it has in fact offered to turn over the Cadwalader File on the condition that Defendants either post security or make payment subject to a claim for return. (ECF Nos. 21 at 2–3 and 27.)  Defendants made no mention of their inability to pay legal fees or post security to secure the Cadwalader File in their papers nor did they establish the same at Oral Argument.  (*See generally* ECF No. 16; Oral Argument at 26.)  Defendants only protested the bond option, reasoning that the process of obtaining a bond would likely steer into Defendants' financial condition and potentially implicate their Fifth Amendment right against self-incrimination.

Cadwalader offered many reasonable alternatives including its willingness to accept: (1) $760,000, the minimum amount of fees it claims are owed, (2) a bond from Defendants' parents who previously posted a combined $5,000,000 dollar bond secured by two pieces of property to obtain Defendants' conditional release, and (3) an escrow arrangement in place of a bond.  This is in addition to Cadwalader's original offer of payment subject to a claim for return.

Further, if Defendants simply cannot afford to avail themselves of any of these options, they must make such a showing or at least assert as much.  Defendants' failure to do so is fatal to Defendants' ability to obtain the Cadwalader File at this juncture. *See Pomerantz*, 704 F.2d at 684 (noting that even if need for the file was established "the record contains no information regarding the defendants' financial condition and specifically their ability to pay" the fees or post security).

## **CONCLUSION**

Accordingly, for the foregoing reasons, Defendants' motion to compel (ECF No. 16) is

denied without prejudice.

Dated:  Central Islip, New York
          September 5, 2023

                                **S O  O R D E R E D**

                            /S/ *James M. Wicks*

                                JAMES M. WICKS
                      United States Magistrate Judge