CMM:AT
F. #2022R00047

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ADAM KAPLAN and
DANIEL KAPLAN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   FEB 20 2025   ★

LONG ISLAND OFFICE

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>23-293</u> (JMA) (S-1)
(T. 15, U.S.C., §§ 80b-6, 80b-14 and 80b-
17; T. 18, U.S.C., §§ 981(a)(1)(C),
982(a)(1), 982(a)(2), 982(b)(1), 1343,
1349, 1512(c)(2), 1956(h), 1957(a),
3147(1), 2 and 3551 <u>et</u> <u>seq.</u>; T. 21,
U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

    At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendants and Relevant Entities</u>

    1.    The Financial Services Firm, an entity the identity of which is known to

the Grand Jury, was a Securities and Exchange Commission ("SEC")-registered investment firm

that, among other things, employed financial advisers to manage the investments of its clients.

    2.    Bank-1, an entity the identity of which is known to the Grand Jury, was a

financial institution, the deposits of which were insured by the Federal Deposit Insurance

Corporation ("FDIC"). Bank-1 conducted business in several states, including New York.

    3.    Bank-2, an entity the identity of which is known to the Grand Jury, was a

financial institution, the deposits of which were insured by the FDIC. Bank-2 conducted

business in several states, including New York.

4.     Bank-3, an entity the identity of which is known to the Grand Jury, was a financial institution, the deposits of which were insured by the FDIC. Bank-3 conducted business in several states, including New York.

5.     The Luxury Goods Boutique, an entity the identity of which is known to the Grand Jury, was a boutique located in Miami, Florida that sold luxury goods.

6.     The defendants ADAM KAPLAN and DANIEL KAPLAN (collectively, the "KAPLANS"), are twin brothers and residents of Great Neck, New York. The KAPLANS were associated as investment adviser representatives with the Financial Services Firm from in or about and between May 2018 and July 2021, both dates being approximate and inclusive. Generally, the KAPLANS each made investment-related recommendations to their clients; had discretion, including trading authority, over their clients' accounts; ordered trades; and managed their clients' investment portfolios. After leaving the Financial Services Firm, the KAPLANS continued to act as investment advisers to their clients.

7.     Co-Conspirator-1, an individual whose identity is known to the Grand Jury, was a resident of Brooklyn, New York.

II.     Victims of the Defendants' Fraudulent Schemes

a.     The Advisory Fraud Scheme Victims

8.     In or about and between May 2018 and November 2022, both dates being approximate and inclusive, the defendants ADAM KAPLAN and DANIEL KAPLAN defrauded at least 50 clients of the Financial Services Firm (the "Advisory Victims"), including some elderly and disabled victims, of at least $5 million.

9.     Victim-1, an individual whose identity is known to the Grand Jury, was a resident of New York, New York and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

10.     Victim-2, an individual whose identity is known to the Grand Jury, was a resident of Brooklyn, New York and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

11.     Victim-3, an individual whose identity is known to the Grand Jury, was a resident of Brooklyn, New York and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

12.     Victim-4, an individual whose identity is known to the Grand Jury, was a resident of Washington, D.C. and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

13.     Victim-5, an individual whose identity is known to the Grand Jury, was a resident of Livingston, New Jersey and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

14.     Victim-6, Victim-7 and Victim-8 are individuals whose identities are known to the Grand Jury and who are residents of Scottsdale, Arizona. Victim-6, Victim-7 and Victim-8 were family members and each beneficiaries with a trust account in their father's name (the "Trust Account"). Victim-6, Victim-7, Victim-8 and the Trust Account were clients of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

b.  The Post-Advisory Fraud Scheme Victims

15.     In or about and between January 2023 and September 2024, both dates being approximate and inclusive, the defendant ADAM KAPLAN, along with Co-Conspirator-1,

defrauded several additional individuals, including Victim-9, Victim-10, Victim-11 and Victim-12, individuals whose identities are known to the Grand Jury, of approximately $1 million.

III.    The Fraudulent Advisory Scheme

16.    In or about and between May 2018 and November 2022, both dates being approximate and inclusive, the defendants ADAM KAPLAN and DANIEL KAPLAN engaged in a scheme to defraud the Advisory Victims in a number of ways. First, while the KAPLANS were associated with the Financial Services Firm, they caused the Advisory Victims to be fraudulently overbilled for advisory fees. Second, the KAPLANS used access to the Advisory Victims' personal information to misappropriate over $4 million from the Advisory Victims for their personal benefit. Finally, the KAPLANS created false documents and made material misrepresentations to the Advisory Victims to conceal their misappropriation of the Advisory Victims' funds.

A.    The Overbilling of Advisory Fees Scheme

17.    While the defendants ADAM KAPLAN and DANIEL KAPLAN were associated with the Financial Services Firm, they caused many of the Advisory Victims to be fraudulently overbilled for advisory fees. During that time, the Financial Services Firm charged the Advisory Victims an advisory fee that was based on a percentage of the Advisory Victims' assets under management. The amount of the fee was set forth in a written agreement between the client and the Financial Services Firm (the "Advisory Agreement"). As the Advisory Victims' investment advisers, the KAPLANS received at least 80% of those advisory fees. The KAPLANS submitted signed, final versions of the Advisory Agreements to the Financial Services Firm. Generally, the fee was billed to the Advisory Victims by the Financial Services Firm on a quarterly basis and was taken directly from the Advisory Victims' brokerage accounts.

18.     In order to perpetrate their fraudulent scheme, the defendants ADAM
KAPLAN and DANIEL KAPLAN orally agreed with Advisory Victims to charge a certain
advisory fee, typically 1% or less per year. The KAPLANS then fraudulently caused the
Advisory Victims to pay higher advisory fees by having the Advisory Victims sign Advisory
Agreements with the fee amount section left blank. After the Advisory Victims signed the
Advisory Agreements, the KAPLANS inserted advisory fees that were higher than what they
orally promised to charge the Advisory Victims, typically over 2%. This caused the Financial
Services Firm to charge the Advisory Victims higher, fraudulently inflated advisory fees. In
total, the KAPLANS caused the Advisory Victims to be overbilled by more than $540,000, of
which the KAPLANS received at least 80%.

B.     The Misappropriation Scheme

19.     In addition to the overbilling scheme, in or about and between May 2018
and November 2022, both dates being approximate and inclusive, the defendants ADAM
KAPLAN and DANIEL KAPLAN misappropriated millions of dollars from the Advisory
Victims through various fraudulent means, including through electronic charges that they
fraudulently applied to the Advisory Victims' credit cards and bank accounts. The KAPLANS
also forged checks from the Advisory Victims' accounts and deposited them into their own bank
accounts.

20.     Purportedly in connection with providing the Advisory Victims with
investment adviser services, the defendants ADAM KAPLAN and DANIEL KAPLAN
requested, and many of the Advisory Victims provided, the KAPLANS with the Advisory
Victims' brokerage accounts, personal bank accounts, and/or their personal credit card
information. Although the KAPLANS informed the Advisory Victims that their funds would be

invested, the KAPLANS instead misappropriated the Advisory Victims' personal information to fraudulently obtain approximately $4.5 million of the Advisory Victims' funds. The KAPLANS then used the funds to, among other things, pay personal expenses and purchase goods, including from the Luxury Goods Boutique.

21.     If Advisory Victims inquired about the fraudulent charges, the defendants ADAM KAPLAN and DANIEL KAPLAN falsely told some Advisory Victims that the fraudulent charges were for advisory fees purportedly owed by Advisory Victims. These representations were false because, as the KAPLANS knew, the Advisory Victims did not owe any additional fees, as the Financial Services Firm had already charged the Advisory Victims for those fees.

22.     The defendants ADAM KAPLAN and DANIEL KAPLAN also falsely told some Advisory Victims that the fraudulent charges represented investments even though the KAPLANS knew that they were misappropriating the Advisory Victims' funds for their own benefit and were not in fact investing the misappropriated funds for the Advisory Victims. In total, the KAPLANS misappropriated at least $4 million.

C.     The Concealment Scheme

23.     In order to conceal their fraud and misappropriation of the Advisory Victims' funds, the defendants ADAM KAPLAN and DANIEL KAPLAN made additional misrepresentations to some of the Advisory Victims and to their financial institutions. In some instances, Advisory Victims contacted the fraud departments of their financial institutions to challenge fraudulent transactions instituted by the KAPLANS, including at Bank-1 and Bank-2. On these occasions, the KAPLANS created, without the knowledge of the Advisory Victims, fictitious agreements with the Advisory Victims that purportedly authorized the defendants to

charge the Advisory Victims' accounts for the specific charges that the Advisory Victims challenged in their fraud claim. The KAPLANS also forged the Advisory Victims' signatures on these agreements without the Advisory Victims' authorization. The KAPLANS then sent those fictitious agreements to the financial institutions so that the financial institutions would deny the Advisory Victims' fraud claims. Due to the fictitious documentation provided by the KAPLANS, the financial institutions denied the Advisory Victims' fraud claims, including Victim-1's fraud claim.

24.     The defendants ADAM KAPLAN and DANIEL KAPLAN also made payments to the Advisory Victims to conceal their fraudulent activities. In some instances, when Advisory Victims complained regarding missing funds that the KAPLANS had misappropriated, the KAPLANS paid the Advisory Victims back using funds that were misappropriated from other Advisory Victims.

IV.     The Post-Advisory Fraud Schemes

25.     The defendants ADAM KAPLAN and DANIEL KAPLAN were terminated by the Financial Services Firm in or about July 2021. From approximately their termination in July 2021 until September 2024, the defendant ADAM KAPLAN and Co-Conspirator-1 defrauded several individuals, including Victims-9 through 12, through the two fraudulent schemes described below.

26.     ADAM KAPLAN and Co-Conspirator-1 claimed that they could invest those victims' funds in new investment opportunities, such as the sale of flowers. However, instead of purchasing any flowers with victim funds, including funds from Victim-9 through 12, as ADAM KAPLAN claimed, ADAM KAPLAN and Co-Conspirator-1 used those funds for their own benefit, including to pay back other individuals.

27.     In addition, the defendant ADAM KAPLAN and Co-Conspirator-1 also defrauded Bank-3 through a credit card fraud scheme. As part of that scheme, ADAM KAPLAN instructed Co-Conspirator-1 to charge credit cards in others' names, individuals the identities of which are known to the Grand Jury, despite the fact that he did not have authorization to do so, and instructed Co-Conspirator-1 to charge those cards from the account of a corporation so that the charges would appear to be legitimate business transactions. However, as ADAM KAPLAN and Co-Conspirator-1 both knew, the charges were not legitimate. Bank-3 bore the loss for some of the defendant ADAM KAPLAN's fraudulent charges.

V.     ADAM KAPLAN's Attempts to Bribe, Threaten, and Injure Others

28.     From approximately March 2023 to the present, the defendant ADAM KAPLAN was aware of an Eastern District of New York ("EDNY") Grand Jury investigation (the "Investigation") into the defendants' criminal conduct. In or about and between April 2023 and September 2024, ADAM KAPLAN attempted to influence, obstruct and impede the underlying Investigation, including through attempts to threaten, injure, and pay off witnesses, and destroy evidence.

29.     In an effort to obstruct the Investigation, the defendant ADAM KAPLAN, using a purportedly untraceable "burner" cellular phone provided to him by Co-Conspirator-1, instructed Co-Conspirator-1 to, among other things, (i) create a fraudulent email from a victim to use as impeachment evidence against that victim at trial; (ii) threaten victims of the Advisory Fraud Scheme; (iii) physically assault victims of the Advisory Fraud Scheme; (iv) pay off victims of ADAM KAPLAN's criminal conduct; and (v) bribe public officials to not bring and/or dismiss charges against him.

30.   The defendant ADAM KAPLAN paid Co-Conspirator-1 tens of thousands of dollars to create false evidence, and threaten and harm victims. Unbeknownst to ADAM KAPLAN, Co-Conspirator-1 in fact did not threaten or harm any individual, and instead falsely informed ADAM KAPLAN about performing those actions.

31.   The defendant ADAM KAPLAN, using the same "burner" phone provided to him by Co-Conspirator-1, also instructed Co-Conspirator-1 to bribe public officials acting on behalf of the United States in an effort to (i) influence those public officials to not bring federal charges against ADAM KAPLAN; and (ii) influence those public officials to dismiss federal charges against ADAM KAPLAN.

32.   Throughout this period, ADAM KAPLAN paid Co-Conspirator-1 tens of thousands of dollars to bribe public officials. Unbeknownst to ADAM KAPLAN, Co-Conspirator-1 in fact did not bribe any individual, and instead falsely informed to ADAM KAPLAN about performing those actions.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

33.   The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

34.   In or about and between May 2018 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Advisory Victims, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate

and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNTS TWO THROUGH ELEVEN
(Wire Fraud)

35.   The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

36.   On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN did knowingly and intentionally devise a scheme and artifice to defraud Victim-1, Victim-2, Victim-3, Victim-4 and Victim-5, and to obtain money and property from Victim-1, Victim-2, Victim-3, Victim-4 and Victim-5 by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit:

| Count | Approx. Date of Wire Transmission | Description of Wire Transmission |
|---|---|---|
| TWO | 01/11/2021 | Electronic charge to Victim-1's bank account for $10,010. |
| THREE | 12/02/2021 | Electronic charge to Victim-1's bank account for $198.99. |
| FOUR | 05/24/2021 | Electronic charge to Victim-2's bank account for $6,261.56. |
| FIVE | 07/02/2021 | Electronic charge to Victim-2's bank account for $15,150.15. |
| SIX | 07/11/2021 | Electronic charge to Victim-3's bank account for $59.49. |
| SEVEN | 09/03/2021 | Electronic charge to Victim-3's bank account for $65.49. |
| EIGHT | 10/30/2019 | Electronic charge to Victim-4's bank account for $4,265.36. |

| Count | Approx. Date of Wire Transmission | Description of Wire Transmission |
|-------|-----------------------------------|----------------------------------|
| NINE | 03/25/2020 | Electronic charge to Victim-4's bank account for $2,000. |
| TEN | 03/04/2022 | Electronic charge to Victim-5's bank account for $12,000. |
| ELEVEN | 04/12/2022 | Electronic charge to Victim-5's bank account for $39,510. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT TWELVE
(Investment Advisor Fraud)

37.     The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

38.     In or about and between May 2018 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN, together with others, did knowingly and willfully use and cause to be used, the mails and means and instrumentalities of interstate commerce, directly and indirectly: (a) to employ one or more devices, schemes and artifices to defraud the Advisory Victims; (b) engage in one or more transactions, practices and courses of business which operated as a fraud and deceit upon the Advisory Victims; and (c) to engage in one or more acts, practices and courses of business which were fraudulent, deceptive and manipulative.

(Title 15, United States Code, Sections 80b-6, 80b-14 and 80b-17; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNTS THIRTEEN THROUGH SIXTEEN
(Money Laundering)

39.     The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

40.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN, together with others, did knowingly and intentionally engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000, as set forth in the chart below, and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Approx. Date of Transaction | Description of Transaction |
|---|---|---|
| THIRTEEEN | 05/18/2020 | Deposit of forged check from Trust Account in the amount of $23,000 into DANIEL KAPLAN's bank account. |
| FOURTEEN | 06/02/2020 | Deposit of forged check from Trust Account in the amount of $10,222.22 into DANIEL KAPLAN's bank account. |
| FIFTEEN | 03/31/2021 | Wire transfer of $20,000, which contained Advisory Victims' funds, to the Luxury Goods Boutique |
| SIXTEEN | 04/01/2021 | Wire transfer of $48,000, which contained Advisory Victims' funds, to the Luxury Goods Boutique |

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

COUNT SEVENTEEN
(Conspiracy to Commit Money Laundering)

41.     The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

42.     In or about and between May 2018 and July 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud

in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT EIGHTEEN
(Conspiracy to Commit Wire Fraud)

43.     The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

44.     In or about and between January 2023 and September 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, including while the defendant ADAM KAPLAN was on release pursuant to an order of the United States District Court for the Eastern District of New York, dated July 25, 2023, issued pursuant to Title 18, United States Code Section 3142, ADAM KAPLAN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud victims, including Victim-9, Victim-10, Victim-11, and Victim-12, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349, 3147(1) and 3551 et seq.)

## COUNT NINETEEN
(Conspiracy to Commit Bank Fraud)

45.     The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

46.     In or about and between March 2024 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, while the defendant ADAM KAPLAN was on release pursuant to an order of the United States District Court for the Eastern District of New York, dated on or about July 25, 2023, issued pursuant to Title 18, United States Code Section 3142, ADAM KAPLAN, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud one or more financial institutions, to wit: Bank-3, and to obtain money, funds, credits, assets, securities and other property owned by, and under the custody and control of, said financial institutions by means of false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349, 3147(1) and 3551 et seq.)

## COUNT TWENTY
(Attempted Obstruction of Justice)

47.     The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

48.     In or about and between May 2023 and July 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ADAM KAPLAN, together with others, did knowingly, intentionally and corruptly attempt to obstruct, influence and impede one or more official proceedings, to wit: a Federal Grand Jury investigation in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## COUNT TWENTY-ONE
(Attempted Obstruction of Justice)

49.     The allegations contained in paragraphs one through 32 are realleged and incorporated as if fully set forth in this paragraph.

50.     In or about and between July 2023 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, while the defendant ADAM KAPLAN was on release pursuant to an order of the United States District Court for the Eastern District of New York, dated on or about July 25, 2023, issued pursuant to Title 18, United States Code Section 3142, ADAM KAPLAN, together with others, did knowingly, intentionally and corruptly attempt to obstruct, influence and impede one or more official proceedings, to wit: a Federal criminal proceeding in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2, 3147(1) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH ELEVEN AND EIGHTEEN

51.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Eleven and Eighteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

52.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THIRTEEN THROUGH SEVENTEEN

53.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Thirteen through Seventeen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

54.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT NINETEEN

55.     The United States hereby gives notice to the defendant charged in Count Nineteen that, upon his conviction of the offense charged therein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offense, to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

56.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/S/

_____
FOREPERSON

_John J. Durham_

_____
JOHN J. DURHAM
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK