UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA

      -against-

ADAM KAPLAN and
DANIEL KAPLAN,

                     *Defendants.*

------------------------------------------------------X

**MEMORANDUM ORDER**

23-CR-00293 (JMA)(JMW)

FILED
CLERK
8/7/2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**A P P E A R A N C E S:**

    Adam Toporovsky
    Paul G. Scotti
    Rebecca Urquiola
    **United States Attorney's Office**
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
    *Attorneys for Government*

    Mark S. Cohen
    **Cohen & Gresser LLP**
    800 Third Avenue, 21st Floor
    New York, NY 10017
    *Attorneys for Defendant Adam Kaplan*

**WICKS,** Magistrate Judge:

        Defendant Adam Kaplan ("Kaplan" or "Defendant") seeks temporary release from custody in order to adequately prepare for trial (ECF Nos. 226, 232), which is strenuously opposed by the Government (ECF No. 231). On referral from the Hon. Joan M. Azrack, the undersigned held a hearing on August 7, 2025. Having reviewed the submissions filed by the parties and having heard the proffers and arguments by counsel, for the reasons that follow, Defendant's motion for temporary release from custody (ECF No. 226) is **DENIED**.

## DISCUSSION

Both Defendants in this case were faced with a sixteen-count indictment that included allegations of conspiracy to commit wire fraud, wire fraud, investment advisor fraud, and money laundering stemming from their activities in connection with defrauding elderly and disabled victims of at least five million dollars. (ECF No. 1.) The original indictment was filed on July 18, 2023, and unsealed on July 25, 2023. (*Id.*) Defendants appeared for an arraignment on July 25, 2023, and were released with conditions. (ECF Nos. 10, 17.) A superseding indictment was filed on February 20, 2025, and Kaplan is now defending a twenty-one-count superseding indictment that alleges two counts of conspiracy to commit wire fraud, ten counts of wire fraud, investment advisor fraud, four counts of money laundering, conspiracy to commit money laundering, conspiracy to commit bank fraud, and two counts of attempted obstruction of justice. (ECF No. 149.) This superseding indictment comes after revocation of bail for serious violations of conditions as discussed below. Kaplan is currently detained in the Metropolitan Detention Center ("MDC") located in Brooklyn, New York awaiting trial (*see* ECF No. 110), with jury selection and trial set to begin on September 8, 2025 (Electronic Order dated July 23, 2025).

Kaplan now asks the Court for temporary release pursuant to 18 U.S.C. § 3142(i) to adequately prepare for his imminent trial. (*See generally*, ECF Nos. 226, 232.) A number of reasons for temporary release are advanced: (i) participation of Kaplan's own defense, (ii) inability to confer with his Counsel or review discovery during the trial, (iii) inadequate medical treatment, (iv) adverse conditions at MDC, [1] and (v) at bottom, that he does not pose a danger to the community nor is he a flight risk based on the strict conditions that Kaplan proposes. (ECF No. 226 at 3-10.) The Government vehemently disagrees and opposes the motion in its entirety. (*See* ECF No. 231.)

---

[1] Defendant Kaplan concedes he does not rely on the inadequate medical treatment as a reason for temporary release but rather asserts that his health will benefit from the temporary release, if granted. (ECF No. 226 at 8-9.) The same holds true for the conditions at MDC. (*Id.* at 9.)

2

## THE LEGAL FRAMEWORK AND ANALYSIS

The relevant statutory lens through which the Court must view this application is 18 U.S.C. § 3142(i). Once a detention order is entered under 3142(e) – like here – a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

> In considering whether there is a compelling reason for a defendant's release under this provision, however, *a court must balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention.* In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case.

*United States v. Gumora*, 454 F. Supp. 3d 280, 287–88 (S.D.N.Y. 2020) (citing *United States v. Chambers*, No. 20-CR-135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020) (internal quotation marks omitted) (collecting cases for and against temporary release) (emphasis supplied)).

Considered a "rarely-used provision in the Bail Reform Act" (GORDON MEHLER ET AL., FEDERAL CRIMINAL PRACTICE: A SECOND CIRCUIT HANDBOOK, § 4-3 at 175, (LexisNexis, 25th ed., 2025)), a defendant seeking temporary release under Section 3142(i) bears the burden to show that temporary release is "necessary for preparation of the person's defense" under that section.[2] *See United States v. Dupree*, 833 F. Supp. 2d 241, 246-50 (E.D.N.Y. 2011) (Matsumoto, J.) (citing cases); *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (same).

This application comes after Kaplan was already released on bail with conditions, only later found to have violated the conditions and the Court revoking bail. (*See* ECF Nos. 104; 109-10.) Specifically, Judge Azrack found there was clear and convincing evidence that established that Kaplan committed several federal crimes while on pretrial supervised release. (ECF No. 110.)

---

[2] At the August 7, 2025 hearing, counsel for Kaplan agreed that the burden lies with Defendant.

Thereafter, Kaplan moved for release on bond again. (ECF No. 127.) The Government opposed while outlining the violations of the original release, which included some examples:

> 1. Adam Kaplan ordered an associate [], to create a fake email from a victim so that Adam Kaplan could use the fake email as evidence at trial and to impeach that victim's credibility; 2. Adam Kaplan engaged in a months'-long (conducted daily) fraudulent Ponzi scheme to steal money from victims; 3. Adam Kaplan attempted to tamper with, threaten, and pay off witnesses, including, telling his associate that a victim needed "to fear", that a victim should be "peeing blood / missing teeth and another visited / scared", that a victim should be sent skull and crossbones imagery, and that his associate should "put [a victim's] phone on fire . . . Seriously, please blow it up"; 4. Adam Kaplan attempted to bribe law enforcement and court personnel; 5. Adam Kaplan committed credit card fraud[.]

(ECF No. 135 at 3) (internal citations omitted).

Ultimately, bail was denied again. (ECF No. 139.) This latest application for temporary release is his third. Kaplan proposes the following conditions for his bail package:

- Kaplan will be confined to a specific location near the legal team's office in Manhattan or an offsite workplace near the Central Islip Courthouse and will only leave such locations for essential medical care. In the event of an unforeseen circumstance, Kaplan will seek Court and Pretrial Services approval in advance to visit another location. At all times, Kaplan will be accompanied by private security, who are represented to be retired law enforcement.

- When trial begins, Kaplan will relocate to an apartment near the Central Islip Courthouse. Both the Manhattan and the Central Islip locations will be available for inspection in advance by the private security firm and provided to the Court for approval. Such apartments are to be "small" for easy "monitoring" by security. At least one security guard will remain at or immediately outside the location at all times.

- Kaplan will not have "access to any computers, cell phones, or other electronic devices (with or without access to the internet)." Kaplan will rely on the security guards to send messages for him and bring him any essential needs such as food or medication.

- Kaplan will not have any visitors except for his legal team, parents and security staff. Of course, this includes any Pretrial Services visits. All visits will be logged and available for Pretrial Services to review.

- Kaplan will have a 24-hour live camera outside the apartments to monitor activity.

- Kaplan, while with his legal team in the offices or workspace, will use the air-gapped approved laptop to review discovery and prepare for his defense. "He will not be permitted to make calls on landlines or cellphones, except in the case of medical

emergencies." The only other exception is conference calls with his team to prepare for his defense.

- Kaplan will wear an electronic ankle bracelet, or a similar device provided by Pretrial Services.

- Kaplan will be permitted to carry a driver's license or a similar form of identification but will not have access to any types of funds, cards, etc.

- Lastly, Kaplan will post a "bond secured by property, and financial responsible sureties as the Court deems appropriate."

(ECF No. 226 at 12-14.)

*First*, Kaplan argues that release is necessary to prepare his defense for trial. (*Id.* at 3-6.) As stated, Kaplan cannot review discovery unless his Counsel prints it in advance, and they review it together during counsel visits at the MDC. (*Id.* at 3.) Also, the ability to meet with counsel has been difficult because the accommodations at MDC are slim as there are only seven rooms to hold private conversations or, alternatively, meet in a common area with many others. (*Id.* at 4.) Moreover, as this is a complex case, Kaplan urges his release. (*Id.*)

On July 9, 2025, Judge Azrack issued an Order that would allow Kaplan access to the Law Library in MDC to review non-designated confidential material on a daily basis, regardless of lockdowns at MDC. (*See* Electronic Order dated 7/09/2025.) However, even with these efforts and the Government's assistance, Kaplan alleges this has not been practical nor has it occurred.[3] (*Id.* at 5.) Kaplan avers that even if he had access to the Law Library, majority of discovery is subject to a protective order, and as such, he requires counsel, which in turn, would require him to be transported to the Central Islip Courthouse as indicated in the July 9, 2025 Order. (*Id.* at 5-6.) The time it takes to transport Kaplan and the conditions (*i.e.*, being shackled) are not efficient. (*Id.* at 6.) He notes this will continue during the trial itself. (*Id.*)

---

[3] There has been no record of Kaplan informing the Court of Law Library issues between July 9, 2025 and the instant motion.

5

The Government's Opposition states that although MDC would not be able to accommodate the July 9, 2025 Order in its entirety, the parties discussed alternatives such as Kaplan being given access to an air-gapped laptop[4] during legal visits. (ECF No. 231 at 4.)  However, the Government is perplexed as to why counsel has not yet provided Kaplan a laptop with discovery preloaded to review. (*Id.* at 8.) Kaplan responded that he is awaiting the Government's specifications as to the laptop and one will be provided for inspection very soon. (ECF No. 232 at 4.)

Notably, discovery was provided in this matter as soon as October 27, 2023, where the government produced discovery in accordance with Fed. R. Crim. P. 16. (ECF No. 41.) Thereafter, supplemental productions were provided on December 21, 2023 (ECF No. 54), January 12, 2024 (ECF No. 57), January 29, 2024 (ECF No. 59), February 7, 2024 (ECF No. 62), September 19, 2024 (ECF No. 112), October 2, 2024 (ECF No. 119), October 16, 2024 (ECF No. 124), November 27, 2024 (ECF No. 134), May 9, 2025 (ECF No. 176), and June 6, 2025 (ECF No. 191). At the very least, this meant that Kaplan had approximately eleven months (October 2023 – September 2024) prior to his bail revocation to review the productions without any impediments. *See United States v. Bankman-Fried*, No. 22-CR-00673 (LAK) (S.D.N.Y. Sept. 12, 2023) (ECF No. 278) ("defendant largely ignores the fact that he had extensive access to most of the ESI for 7-1/2 months before his bail was revoked shortly before trial. … he faced no such impediments during the roughly 7-1/2 months between his presentment to this Court and the revocation of his bail").

The case law is sparse in this Circuit as to whether a defendant's release is necessary for trial preparation; courts often look at any obstacles that detention has made when determining if such obstacles are "sufficiently compelling to outweigh the risks posed by the defendant's release."

---

[4] An "air-gapped laptop" is a laptop or computer on which network interfaces, either wired or wireless, have been physically disconnected.  That is, there is no internet connection or capability to connect to other computers or networks. *See* Mesh Flinders & Ian Smalley, *What is an air gap?*, IBM (Oct. 14, 2024), https://www.ibm.com/think/topics/air-gap.

*United States v. Acevedo-Baldera*, No. 18-CR-00155 (AWT), 2020 WL 9156933, at *7 (D. Conn. Nov. 23, 2020) (collecting cases) (internal citations omitted). Moreover, this subsection of the Statute (§ 3142(i)), is not commonly used. *See also* GORDON MEHLER ET AL., FEDERAL CRIMINAL PRACTICE: A SECOND CIRCUIT HANDBOOK, § 4-3 at 125, (LexisNexis, 24th ed., 2024) ("A rarely-used provision in the Bail Reform Act of 1984 allows for an order of temporary release for a detained defendant when 'necessary for preparation of the person's defense or for other compelling reasons.' A few judges used this provision to allow a defendant to prepare for trial during [Covid-19].")

Courts have detained based on financial danger, combined with an unlikeliness to abide by conditions, in similar circumstances. *See Dupree*, 833 F. Supp. 2d at 245 (explaining that court had previously revoked conditions of pretrial release on grounds of financial danger, where the defendant was accused of committing additional act of bank fraud against same victim while on pretrial release); *see also United States v. Parks*, No. 18-CR-251 (GKF), 2023 WL 2598694, at *4, 6 (N.D. Okla. Mar. 22, 2023), *appeal dismissed*, 670 F. Supp. 3d 1263 (N.D. Okla. 2023), *appeal dismissed as moot*, No. 23-5051, 2023 WL 5091174 (10th Cir. Aug. 9, 2023) ("Given the nature and seriousness of the alleged financial danger, the Court finds that a ten-month period is a necessary regulatory detention to protect the financial safety of the community").

In one case, the Court denied Defendant's temporary release because the correctional center and the Bureau of Prisons ("BOP") had taken steps to allow Defendant access to legal services during Covid-19. *United States v. Jimenez*, No. 20-CR-122 (LTS), 2020 WL 1974220, at *3 (S.D.N.Y. Apr. 24, 2020). Likewise, in *Acevedo-Baldera*, the defendant who was indicted for drug charges during the pandemic, required an interpreter and had counsel who would take a five-hour round trip to visit, was denied temporary release under 3142(i). 2020 WL 9156933, at *1, 7-10. With all those circumstances coupled with Defendant's serious health issues, the Court found that

7

Defendant still had not carried his burden to show that temporary release was necessary for the effective preparation of his defense, even with jury selection just seven weeks away. *Id.* at *8, 10.

Whereas in *United States v. Stephens*, another case during the Covid-19 pandemic, the Court allowed for temporary release under 3142(i) to prepare Defendant's defense because the facility "did not permit a legal call" and there were "similar obstacles" that other defense counsel had experienced. 447 F. Supp. 3d 63, 67 (S.D.N.Y. 2020). Notably, there, the Government did not contest this fact, and a hearing was scheduled in six days following the Court's decision. *Id.* In a similar criminal matter to here, the Court also denied temporary release pursuant to 3142(i), finding that release was not "necessary" for trial preparation. *Dupree*, 833 F. Supp. 2d at 248.

In *Dupree* – another financial crime case – the defendant argued that as there were thousands of pages to review, the limitations at MDC impaired his ability to fully prepare and created an additional financial burden of paying for counsel's travel fees. *Id.* at 246. The Government countered that Dupree was provided with documents as soon as the indictment was returned, he had access to the materials, his "inconvenience" at MDC was not uncommon, and he could "apply for funds" for reimbursement. *Id.* The Court agreed with the Government and found no necessary or compelling reasons were articulated even with the case being viewed as complex. *Id.* at 249.

Here, there are more than suitable and acceptable means for him to review discovery. As discussed above, Kaplan will soon have access to an air-gapped laptop. Counsel for Kaplan is submitting the laptop for inspection to the Government and MDC's Legal Department has agreed to allow Kaplan to personally use the laptop during all legal visits. (*Id.*) Indeed, the laptop was provided for inspection to the Government in open court at the hearing on August 7.

MDC is equipped to handle such requests. Most recently, the Hon. Judge Margaret M. Garnett granted an application, which ordered MDC to allow a defendant with daily access to a

laptop prepared by the government to review discovery in preparation of his case, where he faces the death penalty. *See United States v. Mangione*, No. 25-CR-00176 (MMG) (S.D.N.Y. Aug. 1, 2025) (ECF No. 44) ("The MDC is hereby ORDERED to provide Mr. Mangione with the laptop prepared by the Government, with access to it seven days a week from 8:00 a m to 4:00 pm. If the access needs modification for operational or security reasons, MDC officials may request such modification through the Government.") In addition, air-gapped laptops have been approved by the BOP before. S*ee United States v. Bankman-Fried*, No. 22-CR-00673 (LAK) (S.D.N.Y. Aug. 29, 2023) (ECF No. 238) (BOP allowing Defendant to have access to an air-gapped laptop during legal visits for discovery review as well as a legal team of eleven (11) persons inclusive of attorneys and non-legal staff during such visits); *see id.* (ECF No. 253) ("MDC has notified counsel and the Government that defense counsel is not required to be present for the defendant to have access to the laptop. To date, there have been no reported issues with the functionality of the USB ports and software applications utilized thus far").

In addition, the hours for legal visits are 8:00 am through 7:00 pm on weekdays and 8:00 am through 3:00 pm on weekends or holidays. (ECF No. 231 at 4.) According to the Government, "MDC legal has agreed to permit the defendant to use the laptop to review discovery in the visiting room during legal visits." (*Id.*) These measures were put in place in response to the July 9 Order and permit greater laptop access than ordinarily permitted by MDC. (*Id.*) As such, Defendant has not met his burden to establish "necessity" for temporary release to adequately prepare for trial.

Furthermore, Kaplan's ability to meet with counsel is not being frustrated in any material way. *See United States v. Bankman-Fried*, No. 22-CR-00673 (LAK) (S.D.N.Y. Sept. 12, 2023) (ECF No. 278) (denying temporary release under 3142(i), noting that "no represented defendant, much less a defendant detained pretrial in order to protect the public, has a constitutional or other right to inspect [every] bit of [discovery]" and finding that defendant's attorneys may provide

9

discovery for review on hard drives in the MDC). Indeed, between June 1, 2025, and August 1, 2025, the defense team has visited the MDC no less than twenty-two times. (ECF No. 231, at 1-2, 11.) To the extent there are any impediments to this discovery review protocol, counsel should promptly seek court intervention.

*Second*, although Kaplan does not rely on medical need as a reason relied upon for his release, he argues "granting his release will have the salutary benefit of allowing Mr. Kaplan to begin receiving appropriate care." (ECF No. 226 at 8.) However, as the Government outlined, the MDC has provided Kaplan with medical treatment many times. (ECF No. 231 at 9.)  True medical need, therefore, is absent here.

*Third*, the current conditions at MDC as Kaplan describes them are "appalling" with substantial gang activity and poor medical attention. (ECF No. 226 at 9.) These conditions have not enabled Kaplan to focus on his complex case. (*Id.* at 10.) The Court is cognizant of the reality of MDC and the many decisions that have written on such conditions. *See e.g.*, *United States v. Smith*, 660 F. Supp. 3d 210, 219 (S.D.N.Y. 2023) (recognizing that "MDC imposes very serious burdens, including on defendants requiring serious medical care, that MDC is not always readily able to provide"); *United States of America, v. Sean Combs, Defendant.*, No. 24-CR-542 (AS), 2025 WL 2211328, at *2 (S.D.N.Y. Aug. 4, 2025) (stating that there has been "public outcry" regarding MDC's conditions, while denying bail as defendant was kept safe despite dangerous incidents); *United States v. Cruz*, No. 24-CR-145 (VEC), 2024 WL 3634861, at *4 n.6 (S.D.N.Y. Aug. 1, 2024) (collecting cases discussing MDC conditions); *United States v. Colucci*, 743 F. Supp. 3d 452, 453 (E.D.N.Y. 2024) ("[T]he dangerous, barbaric conditions that have existed for some time at the … MDC.").  However, because Kaplan is a danger to the community, the conditions at MDC are not considered a compelling reason to allow temporary release. *Cf. United States v. Chavez*, 710 F. Supp. 3d 227, 236 (S.D.N.Y. 2024) ("For these reasons, the Court holds that the conditions at the

10

MDC constitute 'exceptional reasons' why detention of most defendants who do not pose a risk of flight or danger to the community, including Chavez, 'would not be appropriate.'").

*Finally*, Defendant has shown the Court that he is a danger to the community. The Court cannot ignore Defendant's bail and detention history and the violations that led to the initial revocation. On the Government's motion to revoke bail, Judge Azrack concluded that no condition or combination of conditions of release could reasonably assure the safety of any person and the community. (ECF No. 110.) After Defendant was remanded to MDC, Judge Azrack denied Defendant's second motion for bail. (ECF No. 139.) Based on Kaplan's direct violation of the conditions of his release, including committing conspiracy to commit wire fraud and attempting to bribe a government official, he has "shown that he cannot be trusted and cannot be monitored while on pretrial release." (ECF No. 135 at 7.) Further, Defendant has shown the Court that "he is a real, *physical* danger to others, including victims and witnesses." (*Id*. at 8) (emphasis in original). His prior acts discussed above provide the Court with ample concern for the safety of the community. *See also id.* at 3, 8.

"Ultimately, the Court is unconvinced the additional conditions [suggested by Kaplan] or any further combination of conditions would sufficiently mitigate or protect the community from the potential danger given the risk that Defendant could continue to wreak economic harm while on release." *United States v. Alli*, No. 22-CR-00395 (GRB)(JMW), 2024 WL 3520450, at *7 (E.D.N.Y. July 24, 2024) (citing cases); *see id.* ("The Court's finding of probable cause to believe that Defendant committed white collar crimes similar to those he pleaded guilty to on December 8, 2024 evinces not only the Defendant's further propensity for sustained fraud, but his lack of remorse for the previous crimes"); *Chambers*, 2020 WL 1530746, at *1 (denying pretrial release based on the defendant's danger to the community). *See United States v. Bankman-Fried*, No. 23-CR-06914 (JMW) (DC) (WJN) (2d Cir. Nov. 21, 2023) (ECF No. 32.1) (affirming district court's denial of

11

release) ("The record supports the district court's conclusion that there was probable cause to believe that the Defendant-Appellant attempted to tamper with two witnesses in violation of 18 U.S.C. § 1512(b), and specifically that he acted with unlawful intent to influence those witnesses.")

Therefore, upon careful consideration, Defendant's application for temporary release is denied since Defendant has failed to demonstrate that temporary release is "necessary for preparation of [his] defense or for another compelling reason." 18 U.S.C. § 3142(i).

## **CONCLUSION**

Accordingly, for the foregoing reasons, as well as the reasons set forth on the record, Defendant's motion for temporary release from custody (ECF No. 226) is **DENIED**.

Dated: Central Islip, New York
August 7, 2025

**S O   O R D E R E D:**

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge