# Exhibit F

# ECF No. 188-21 - Redacted

1

<pre>
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
 2     - - - - - - - - - - - - - - X
         UNITED STATES OF AMERICA,    :    23-CR-00293(JMA)
 3                                     :
                                       :
 4                                     :    United States Courthouse
             -against-                 :    Central Islip, New York
 5                                     :
                                       :
 6                                     :    December 17, 2024
                                       :    10:30 a.m.
 7       ADAM KAPLAN and DANIEL        :
         KAPLAN,                       :
 8                                     :
              Defendants.             :
 9     - - - - - - - - - - - - - - X
</pre>

10    TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION AND STATUS
                            CONFERENCE
11         BEFORE THE HONORABLE JOAN M. AZRACK
              UNITED STATES DISTRICT COURT JUDGE

12

13

14                    A P P E A R A N C E S:

15

16   For the Government:        BREON PEACE, ESQ.
                                United States Attorney
17                              Eastern District of New York
                                100 Federal Plaza, Suite 570
18                              Central Islip, New York 11722

19                              BY:  ADAM TOPOROVSKY, ESQ.
                                     PAUL G. SCOTTI, ESQ.
20                                   Assistant United States Attorneys

21

     For Deft A. Kaplan:        MORRISON COHEN LLP
22                              909 Third Avenue, Floor 27
                                New York, New York 10022
23
                                BY:  ERIC M. CREIZMAN, ESQ.
24                                   CHRISTINA GOTSIS, ESQ.

25

2

```
 1              A P P E A R A N C E S: (Continued)

 2
   For Deft D. Kaplan:        MICHAEL TREMONTE, ESQ.
 3                            90 Broad Street, 23rd Floor
                              New York, NY 10004
 4
                              SHER TREMONTE LLP
 5                            90 Broad Street
                              New York, NY 10004
 6
                              BY:  CLAIRE BLUMENTHAL BUCK, ESQ.
 7

 8 Court Reporter:           DENISE PARISI, RPR, CRR
                             E-mail: DeniseParisi72@gmail.com
 9
   Proceedings recorded by computerized stenography.  Transcript
10 produced by Computer-aided Transcription.

11                   *     *     *     *     *

12

13         (In open court.)

14         THE COURTROOM DEPUTY:  Calling criminal case

15 2023-293, United States of America versus Adam and Daniel

16 Kaplan.

17         Counsel, please state your appearances for the

18 record.

19         MR. TOPOROVSKY:  Good morning, Your Honor.

20         Adam Toporovsky and Paul Scotti for the United

21 States.

22         THE COURT:  Good morning.

23         MR. CREIZMAN:  Good morning, Your Honor.

24         Eric Creizman and Christina Gotsis for Adam Kaplan.

25         MR. TREMONTE:  Good morning, Your Honor.
```

3

1            Michael Tremonte and Claire Blumenthal Buck for

2   Daniel Kaplan.

3            THE COURT:  Good morning.  Make sure you use your

4   microphone over there, Mr. Tremonte.

5            Okay.  Good morning, everyone.  I have a few

6   organizational matters to go over before I turn to you for

7   your agenda today.

8            I just want to remind everyone, our trial date is

9   May 5th.  Okay.  I see nods of heads.  That's good enough.

10            And then I think we need to schedule briefing.  I

11   don't know whether we need a hearing or not on the Rule 46

12   motion to forfeit bail.  I thought I would set a briefing

13   schedule sometime in the new year on that.

14            MR. TOPOROVSKY:  That would work for the Government,

15   Your Honor.

16            THE COURT:  So I'll issue an order later today.

17            Is the application today from Mr. Creizman?

18            MR. CREIZMAN:  Yes, Your Honor.

19            THE COURT:  Anything you want to do before that,

20   Mr. Toporovsky?  Anything else?

21            MR. TOPOROVSKY:  No, Your Honor.  Thanks.

22            THE COURT:  Mr. Creizman?

23            MR. CREIZMAN:  Yes.  Thank you, Your Honor.

24            There are a couple of changes that have happened

25   since my reply brief was filed.

4

1              First of all, I want to describe the bail --

2              THE COURT:  On December 14th?

3              MR. CREIZMAN:  On December -- yes, December 14th,

4      yes.

5              THE COURT:  Okay.

6              MR. CREIZMAN:  So, first of all, let me describe the

7      bail package.  We are proposing a $5 million fully secured

8      bond co-signed by Drs. Idida and Stuart Kaplan --

9              THE COURT:  But, wait, I have a question.

10             The properties that were posted on the previous bond

11     are encumbered.

12             MR. CREIZMAN:  Correct.  I'm offering new

13     properties.

14             THE COURT:  Okay.

15             MR. CREIZMAN:  A Miami condominium that is worth

16     approximately $1.5 million; and commercial property, including

17     Dr. Idida Kaplan's medical office space; as well as the

18     residential apartment building worth about at least $5 million

19     combined.

20             Okay.  The conditions are house arrest with GPS

21     monitoring --

22             THE COURT:  So the same conditions that you laid

23     out --

24             MR. CREIZMAN:  The same conditions as before.

25             THE COURT:  -- in your application.

5

1          MR. CREIZMAN:  There are two changes, and this is

2    kind of unusual, but may we approach the bench, actually?

3    There's something that could be on the record, but I would

4    prefer it not be.

5          THE COURT:  All right.

6          With the Government; correct?

7          MR. CREIZMAN:  Yes, absolutely.

8          (Sidebar.)

9          (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<em>Sidebar</em>

6

1      (Sidebar conference held on the record out of the

2  hearing of the jury.)

3          MR. CREIZMAN:  Your Honor, in response to our reply

4  brief, ████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████

7  ██████████

8          My client --

9          THE COURT:  Currently?

10         MR. CREIZMAN:  Yes.  This just happened on Monday.

11         MS. GOTSIS:  Yesterday.

12         MR. CREIZMAN:  Yesterday.

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ██████████████████████████

16        ██████████████  ██████████████

17        ██████████████  ████████████████████

18        ██████████████  ██████████████████████

19  ██████████████████

20         MR. CREIZMAN:  I just wanted to note that for the

21  record.

22         THE COURT:  Thank you.

23         (Sidebar ends.)

24         (Continued on next page.)

25

7

1          (In open court.)

2          MR. CREIZMAN:  Thank you, Your Honor.

3          So for the reasons that were stated in our papers,

4    Mr. Kaplan -- there are conditions that can reasonably assure

5    Mr. Kaplan's appearance and assure the safety of the

6    community, and I think one significant factor happens to be

7    the fact that CC1 is no longer -- he's a Government witness.

8    He's no longer going to be communicating with Mr. Kaplan, so

9    that, I think, is sufficient at least to meet our burden of

10   production.

11         THE COURT:  Why?  Because Mr. Kaplan is not going to

12   reach out to somebody else?  Your papers describe CC1 as if

13   it's all because of CC1 and there wasn't a willing partner on

14   the other side.  It takes two to tango, and your client was

15   more than a willing participant in this.

16         MR. CREIZMAN:  I understand, Your Honor.  But I will

17   say that Mr. Kaplan -- taking the texts and evidence at face

18   value, as we are for the purposes of this motion, it's clear

19   that CC1 took advantage of Mr. Kaplan; that he engaged in this

20   scheme to defraud Mr. Kaplan on the -- so that he can take

21   advantage of him and get money from him.

22         And, yes, according to the texts, it's clear that

23   Mr. Kaplan went, you know -- did not decline Mr. CC1's offers,

24   but that is just one part of the picture.  I think with

25   that -- there's no evidence that Mr. Kaplan was looking for

8

1    another person to do this; that he sought CC1 out.  CC1 knew

2    Mr. Kaplan for quite some time beforehand in a business

3    context, and when he heard that the SEC case was filed, he

4    pounced on Mr. Kaplan.

5            THE COURT:  He what?

6            MR. CREIZMAN:  Pounced.  I mean, he preyed on

7    Mr. Kaplan.

8            THE COURT:  I just think this is a very strained

9    interpretation of the texts and the communications that were

10   cited, but you're a defense lawyer.  I guess that's your job.

11           MR. CREIZMAN:  Well, I don't think that the texts

12   are very good for Mr. Kaplan in any way, but let me just say

13   this, that the question really is, though, is there a set of

14   conditions that can reasonably assure the community safety,

15   and I believe that there is, based on the conditions that

16   we've offered.  For Mr. Kaplan to have to endure the MDC at

17   this point, given all the conditions that we raised, and given

18   his health conditions --

19           THE COURT:  My concern about the conditions that you

20   raised, and the health conditions, is the following:  I went

21   and got the docket sheet this morning, because, typically, if

22   there's an issue regarding a medical condition at the MDC,

23   it's brought to the Government's attention and then it's

24   brought to my attention.  There is nothing, nothing in this

25   docket where you've reached out for my intervention with the

9

1    MDC about any kind of ███████████████████ that

2    required attention that Mr. Kaplan wasn't getting there.

3    Typically, that's what happens.

4           And I will say, for a very long time, the MDC was

5    terrible at responding to it, but, actually, since September,

6    I found them to be responsive with one intervention by the

7    Court.  You have not asked this Court to intervene once, not

8    once, in your complaints about Mr. Kaplan's medical condition.

9           MR. CREIZMAN:  That is true, Your Honor, but

10   Mr. Kaplan has complained to the MDC and Ms. Gotsis --

11          THE COURT:  Here I am.

12          MR. CREIZMAN:  Thank you, Your Honor.  I mean, we

13   would reach out, but --

14          THE COURT:  But you haven't.

15          MR. CREIZMAN:  -- but the issue, I think, goes to

16   the larger -- his chronic conditions that are not necessarily

17   going to require immediate attention at any given moment but

18   requires follow-up care and evaluation --

19          THE COURT:  -- that I can order the MDC to take, and

20   then if they don't, we are in a different position.

21          MR. CREIZMAN:  Sure, Your Honor, we would propose

22   that.

23          THE COURT:  You need to propose that before you come

24   here and say that they're not taking care of him.  Every time

25   I've intervened in the last three or four months, the

10

1    defendant has gotten the medical attention he's needed.

2           MR. CREIZMAN:  I understand, Your Honor.

3           But he is facing ███████████████████████████

4    ██████████████████████████████████████████████

5    █████████████████████████████████████████

6    ██████████████████████████████, at a minimum.

7           And so my point is that if there are conditions,

8    which I believe that these are reason -- these can reasonably

9    assure the community safety, reasonably assure that he doesn't

10   reach out to anybody, and given the Bail Reform Act's

11   preference for pretrial release, if there are conditions, I'm

12   proposing that he be released on those conditions.

13          THE COURT:  Do you want to respond?

14          MR. TOPOROVSKY:  Yes, Your Honor, quickly.

15          The most important part of the defendant's motion

16   reply in what Mr. Creizman said today is that they don't

17   challenge the affidavit and they can't because it's incredibly

18   corroborated.  There's phone and text records, bank records,

19   interviews with over a dozen witnesses.  This defendant

20   attempted to threaten and injure victims and witnesses; he

21   used multiple burner phones and aliases; he tried to bribe DOJ

22   officials; and he's a serial fraudster.  He flagrantly --

23   daily -- committed crimes while on bond.  That's where the

24   calculation should end.  He needs to be detained to protect

25   the community and the integrity of these proceedings.

11

1            Now, there's a lot factually wrong in the

2    defendant's papers, and we won't go through all of it -- I

3    don't think it's necessary -- but this one line -- I think the

4    Court addressed this -- that CC1 prompted the crime.  It's

5    just not true.  It's wrong.  It's ridiculous.

6            First, of course, the years of fraud that the

7    defendant was indicted for have nothing to do with CC1.  But

8    much of the other conduct, the conduct in the affidavit, that

9    is Adam Kaplan directing and ordering CC1 to do it.  Adam

10   Kaplan ordered CC1 to create fake evidence.  He ordered CC1 to

11   visit the Florida victim.  He constantly sent follow-up

12   messages to CC1 to make sure that he was following through

13   with the orders.  Adam Kaplan sent the text that said:  With

14   one peeing blood, missing teeth, and another visited scared.

15           Those are Adam Kaplan's words, not CC1's.  And when

16   CC1 expressed reservations in the text, he said, I don't feel

17   good about doing something, or what if someone calls 9-1-1?

18           Adam Kaplan said, quote, It must be done.

19           Adam Kaplan told him to follow through.  Adam Kaplan

20   is the one who said:  Put her phone on fire.  Seriously,

21   please blow it up.

22           These are Adam Kaplan's words, not CC1's.  These are

23   Adam Kaplan's ideas.

24           Now, I also need to note that Adam Kaplan also

25   defrauded CC1 and used fake names to defraud him.  That was

12

1   obviously not prompted by CC1.  And victims will testify that,

2   after indictment, Adam Kaplan is the one who had defrauded

3   them.

4           Obviously, also, it is Adam Kaplan who is on the

5   phone talking code to his parents; he's not talking to CC1

6   there.

7           Just, quickly, regarding ████████████  ██████

8   ████████████████████████████████████████████████.

9   I can't talk about the veracity of that.  Frankly, the

10  defense, before Adam Kaplan was in the MDC, talked about

11  ██████████████████████████, we tried to look into

12  that, we were stonewalled by the defense in had that

13  investigation.  Now, again --

14          THE COURT:  You mean ████████████ he went into

15  custody?

16          MR. TOPOROVSKY:  Yes, that there are victims ███████

17  ██████████████████.  We tried to look into it.  They

18  wouldn't, obviously, talk to us or help us, but we tried to

19  get into that investigation.

20          ████████████████████████████████████████████

21  ████████████████████.  We're obviously trying

22  to conduct an investigation.  ████████████████████████

23  ████████████████████████  Frankly,

24  personally, based on Adam Kaplan being a serial fraudster and

25  liar, it's hard for me to believe it's true, but it could be

13

1    true.  And, frankly, given that it's a federal facility, ███

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████.  I was

5    told by MDC legal this morning that they are -- ███████████

6    ████████████████████████████████████████████████████████

7    █████████████████████  █████████████████████████

8    █████████████████████████████████████.

9          Now, we reached out to the defense to say, █████████

10   ███████████████  ████████████████████  ███████████████████

11   ███████████████████  They refused to give those to

12   us.  Obviously, we will try to work with the MDC, and ██████

13   █████████████████████████████████████████████  and

14   go back to the general population.

15         MR. CREIZMAN:  Yes, Your Honor, we declined to

16   provide that information to the Government because we were

17   concerned about the very thing that occurred, which is that

18   ████████████████████████████████████████████████████████

19   ██████████████████████  -- which is what we tried to avoid for

20   Mr. Kaplan.

21         I've gone, now several times, through these texts,

22   more times than I have ever wanted to go through any texts,

23   but this -- I have not seen any efforts by Mr. Kaplan to

24   defraud CC1, I haven't seen any use of aliases to do so.  This

25   is all -- this is all exaggerated.  Honestly, I think that --

14

1    now, the texts are not good for Mr. Kaplan, but that is one

2    factor that the Court needs to consider in terms of granting

3    release.  And, here, there is -- Mr. Kaplan can be confined to

4    an apartment.

5              THE COURT:  He did this from an apartment.

6              MR. CREIZMAN:  Yes, Your Honor.

7              THE COURT:  He's going to have a phone.

8              MR. CREIZMAN:  But he was not under the same degree

9    of scrutiny as he will be in this circumstance.

10             THE COURT:  I can't have a pretrial service officer

11   live with him.

12             MR. CREIZMAN:  No, Your Honor, but --

13             THE COURT:  You're asking the Court to give him a

14   certain degree of trust.

15             MR. CREIZMAN:  There doesn't need to be trust

16   because the fact of the matter is, he will have electronic

17   monitoring, strict home detention, Pretrial Services --

18             THE COURT:  He had that chance before.  He was on

19   bail with a set of conditions.

20             MR. CREIZMAN:  I understand, Your Honor.  But I

21   think that the -- look, there are -- we pointed to cases where

22   the Court found that a defendant -- there was probable cause

23   to believe that a defendant committed a crime while out on

24   release --

25             THE COURT:  Maybe one.  I have never, in all of my

15

1   years in the criminal justice system, seen the breadth, depth

2   and volume of violations of a defendant in a criminal case in

3   such a short time.  It just covers the spectrum.

4            MR. CREIZMAN:  I understand.

5            THE COURT:  Contacting victims?  Violation.

6   Defrauding them?  Coming up with a scheme to steal from

7   victims?  Trying to bribe witnesses?  Threatening people with

8   violence?  Trying to bribe the U.S. Attorney's Office?

9   Committing credit card fraud?  And, you know, you can point to

10  CC1, but I listened to the text, your client was a primary

11  actor.

12           MR. CREIZMAN:  I'm not suggesting that he's absolved

13  of responsibility because CC1 initiated it, but that -- but I

14  am saying that without -- that, as a practical matter, without

15  CC1, Mr. Kaplan, there's not -- there's no -- a danger of

16  Mr. Kaplan reaching out to people.

17           THE COURT:  I'm supposed to go on faith and trust

18  Mr. Kaplan after he's totally breached?

19           MR. CREIZMAN:  The conditions that we are proposing

20  effectively are just as strict as those that would be in the

21  MDC in terms of making sure he doesn't engage in the kind of

22  conduct that would violate his bail conditions or additional

23  crimes.

24           THE COURT:  Listen, I appreciate your vigorous

25  advocacy for him.  I appreciate what his parents are prepared

16

1   to do for him.  I think they're crazy to post more property

2   for him unless they just want to give it to the Government,

3   but his intentional violations of his conditions of release

4   are why I revoked this bail in the first place and I'm not

5   going to permit him out even on the conditions that you are

6   proposing.  I think he is a danger to the community.  I think

7   he's a risk of flight.  He's probably facing additional

8   charges.  I don't think that there's any condition, or

9   combination of conditions, that assures the safety of the

10  community, the witnesses, or his appearance.

11          And I am troubled by you making arguments about his

12  lack of medical care at the MDC without coming to the Court.

13          MR. CREIZMAN:  I will come to the Court.

14          THE COURT:  And I believe you know better.  I think

15  you know that you can come to the Court with medical issues at

16  the MDC.  I do a medical order.  And, as I said, in the last

17  several months, my medical orders have been followed, adhered

18  to, and issues have been resolved with one order.

19          MR. CREIZMAN:  I appreciate that, Your Honor.  There

20  was nothing that Mr. Kaplan had faced in -- just so that I can

21  explain why I didn't go to the Court, there was nothing that

22  he was facing that was an immediate danger to his life, but

23  there are issues that he would need to evaluate and follow up

24  on his chronic conditions.

25          THE COURT:  Well, your application is denied.  And I

17

1    invite you, even if it's a chronic condition, if it requires

2    medical attention and the Government can't work something out

3    directly with the MDC, I am here to hear you and issue an

4    order if necessary.

5              MR. CREIZMAN:  Of course, Your Honor.

6              THE COURT:  All right.  What's next?

7              Is there going to be a superseder in this case?

8              MR. TOPOROVSKY:  Sorry about that, Your Honor.  If

9    we get a quorum in the next two weeks, there will be a

10   superseding indictment.

11             THE COURT:  I'm just trying to think down the road,

12   because I'm not changing this trial date.  Hear me.  Hear me

13   now.

14             I think what we'll do is I will consult my schedule

15   and I will issue an order later today with a briefing schedule

16   for the forfeiture motions.

17             All right.  What else?

18             And then probably early in the new year, I will

19   issue a motion schedule for the trial.

20             What motions do you anticipate, if you know, now?

21             MR. TREMONTE:  Your Honor, we're still researching,

22   but I'm certain that we will make pretrial motions.

23             If we can just inquire.  I understand that the Court

24   is not inclined to move the trial date -- we hear you loud and

25   clear -- can we inquire whether we should be expecting a

18

1  substantial volume of additional discovery so that we can plan

2  for that?

3        THE COURT:  That's a good question.

4        MR. TOPOROVSKY:  No, Your Honor.

5        THE COURT:  Mr. Creizman?

6        MR. CREIZMAN:  Yes, we plan on making motions.  I

7  can think of, to begin with, a Bill of Particulars motion on

8  the superseder and perhaps a severance of counts on the

9  superseder -- what I'm expecting to be a superseder.

10        THE COURT:  For instance, if there are obstruction

11  counts, you are going to seek to sever?

12        MR. CREIZMAN:  Potentially, it depends, in terms of

13  this CC1 crime spree that is being alleged.

14        THE COURT:  I think we should put this on for a

15  status, which may be the date I hear argument on the Rule 46

16  motion.

17        Lauren, do you have something scheduled the week of

18  February 11th?

19        THE COURTROOM DEPUTY:  We have the trial in

20  Brooklyn.

21        THE COURT:  I would like to put this on for a status

22  on March 4th, eleven o'clock.

23        MR. TOPOROVSKY:  That works for the Government, Your

24  Honor.

25        Your Honor, I know you already deemed this a complex

1    case.  In an abundance of caution, can we exclude time until
2    March 4th?

3              MR. TREMONTE:  No objection.

4              MR. CREIZMAN:  Your Honor, given that my client is
5    in prison, I would object, but I don't think that there's any
6    basis.  I don't think that that matters given the complex case
7    designation.

8              THE COURT:  Well, I'm going to exclude time.
9    There's discovery still coming, and there's probably going to
10   be a superseding indictment.

11             So I will see you on March 4th.  It's possible I
12   will issue an order before on the Rule 46, but you will know.

13             If you have any issues at the MDC, here's what you
14   do:  You get in touch with the Government; you discuss it with
15   them; if they can't resolve it, you bring it to my attention
16   immediately.

17             MR. CREIZMAN:  I will do, Your Honor.

18             Thank you.

19             MR. SCOTTI:  Your Honor, one other thing, based on
20   Mr. Creizman's objection to the speedy trial waiver --

21             THE COURT:  This is a complex case.

22             MR. SCOTTI:  Understood, Your Honor.

23             If Mr. Creizman, and the defendants together, want a
24   speedier trial, the Government is ready to go to trial.  I
25   just want that on the record.

20

1          THE COURT:  Okay.  Mr. Creizman has a lot to think

2    about.

3          Thank you.

4          (Matter concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Denise   Parisi  , RPR , CRR*
*Official Court Reporter*