UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                                               :
UNITED STATES OF AMERICA                                       :
                                                               :   Case No. 2:23-CR-00293 (JMA)(JMW)
            v.                                                 :
                                                               :
ADAM KAPLAN and DANIEL KAPLAN,                                 :
                                                               :
                                                               :
                              Defendants.                      :
                                                               :
-------------------------------------------------------------- X


**ADAM KAPLAN'S MEMORANDUM OF LAW IN OPPOSITION
TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

Mark S. Cohen
S. Gale Dick
Drew S. Dean
Daniel Joiner
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, NY 10022
(212) 957-7600
mcohen@cohengresser.com
sgdick@cohengresser.com
ddean@cohengresser.com
djoiner@cohengresser.com

*Attorneys for Adam Kaplan*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 4

I.   EVIDENCE OF THE CIVIL PROCEEDINGS SHOULD BE EXCLUDED ................. 4

    A.   Evidence of the Civil Proceedings Should be Excluded Under Rule 403. ............ 4

    B.   The Government Seeks to Use the Tsukerman Lawsuit and Newman Arbitration to Impermissibly Bolster a Witness. ..................................... 6

    C.   The Government Does Not Sufficiently Disclose the Evidence. ........................... 7

II.  EVIDENCE OF THE KAPLANS' SEPARATIONS FROM THEIR PRIOR FIRMS AND THE MERRILL LYNCH LETTERS SHOULD BE EXCLUDED. ........................ 9

    A.   Applicable Law ............................................................................................ 10

    B.   Evidence of the Kaplans' Alleged Solicitation of the Letters is Not Admissible for a Permissible Purpose under Rule 404(b). .................................. 12

    C.   Evidence of the Kaplans' Alleged Forgery of the Letters is Not Admissible for a Permissible Purpose under Rule 404(b). ....................................... 14

    D.   Evidence of the Kaplans' Separations from Morgan Stanley and Merrill Lynch is Not Admissible for a Permissible Purpose under Rule 404(b). ............. 15

    E.   Evidence of the Morgan Stanley Resignation, Merrill Lynch Departure, and Merrill Lynch Letters is Inadmissible under Rule 403. ....................................... 16

III. EVIDENCE OF ALLEGED STATEMENTS MADE TO CLIENTS REGARDING DEFENDANTS' HARVARD EDUCATION AND PROFESSIONAL BACKGROUND ARE NOT ADMISSIBLE. .................................................................. 18

    A.   Statements Regarding the Kaplans' Educational and Professional Background Are Not Direct Evidence of the Charged Crimes. ............................ 18

    B.   Statements Regarding the Kaplans' Educational and Professional Background Are Not Admissible "Other Act" Evidence Under Rule 404(b). ..... 20

i

Page

      C.     Statements Regarding the Kaplans' Educational and Professional Background Should be Excluded Under Rule 403. ............................................... 21

IV.    THE COURT SHOULD DEFER RULING ON THE ADMISSION OF ADAM KAPLAN'S INITIAL RELEASE AND BOND CONDITIONS. .................................... 23

V.    THE GOVERNMENT SHOULD BE PRECLUDED FROM REFERENCING PREJUDICAL EVIDENCE IN ITS OPENING STATEMENT, AND THE DEFENSE RESERVES THE RIGHT TO SEEK LIMITING INSTRUCTIONS............ 24

VI.    ADOPTION OF ARGUMENTS IN THE D. KAPLAN OPPOSITION.......................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barilli v. Sky Solar Holdings, Ltd.*,
  389 F.Supp.3d 232 (S.D.N.Y. 2019)..................................................21

*Mark Tsukerman v. Adam S. Kaplan and Daniel E. Kaplan*,
  No. 651398/2023, NYSCEF No. 43 (N.Y. Sup. Ct. Dec. 19, 2024) ........................................5

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*,
  32 Misc.3d 758 (N.Y. Sup. Ct. 2011) ..................................................21

*Old Chief v. United States*,
  519 U.S. 172 (1997).................................................................5

██████████████████████████████████████,
  ████████████████████, NYSCEF No. 24 (N.Y. Sup. Ct. Aug. 28, 2023) ...................................5

*S.E.C. v. Adam A. Kaplan and Daniel E. Kaplan*,
  No. 23-CV-1648 (JMA) (ARL), ECF No. 63 (E.D.N.Y. Oct. 31, 2023) ................................5

*S.E.C. v. Badian*,
  822 F. Supp. 2d 352 (S.D.N.Y. 2011).................................................7

*Saldarriaga v. United States*,
  No. 99-CV-4487 (WK), 2002 WL 449651 (S.D.N.Y. Mar. 21, 2002)....................................5

*United States v. Ahmed*,
  No. 14-CR-277 (DLI), 2016 WL 3647686 (E.D.N.Y. July 1, 2016)......................................5

*United States v. Bodnar*,
  37 F.4th 833 (2d Cir. 2022) ........................................................6

*United States v. Curley*,
  639 F.3d 50 (2d Cir. 2011)......................................................11, 21

*United States v. Diaz*
  652 F. Supp. 3d 271 (E.D.N.Y. 2023) ...............................................19

*United States v. Graham*
  51 F.4th 67 (2d Cir. 2022) ........................................................20

*United States v. Jackson*
  792 F. App'x 849 (2d Cir. 2019) ...................................................20

Page(s)

*United States v. Jadusingh*,
  No. 18-CR-257 (KAM), 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020) ......................11, 17, 22

*United States v. Johnson*,
  262 F.R.D. 410 (D. Del. 2009) ............................................................................................8

*United States v. Kahale*,
  789 F. Supp. 2d 359 (E.D.N.Y. 2009) ..................................................................9, 13, 18, 21

*United States v. Klein*,
  No. 16-CR-442 (JMA), 2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017) ...................................7

*United States v. Klein*,
  No. 16-CR-422 (JMA), 2017 WL 839765 (E.D.N.Y. Mar. 1, 2017) .....................................23

*United States v. Kordel*,
  397 U.S. 1 (1970) ...................................................................................................................8

*United States v. Martoma*,
  No. 12-CR-973 (PGG), 2014 WL 31213 (S.D.N.Y. Jan. 6, 2014) ...................................12, 13

*United States v. Mermelstein*,
  487 F. Supp. 2d 242 (E.D.N.Y. 2007) ..................................................................................15

*United States v. Motovich*,
  No. 21-CR-497 (WFK), 2024 WL 3303723 (E.D.N.Y. July 2, 2024) .............................14, 15

*United States v. Nachamie*,
  101 F. Supp. 2d 134 (S.D.N.Y. 2000) ..................................................................................19

*United States v. Paulino*,
  445 F.3d 211 (2d Cir. 2006).................................................................................................24

*United States v. Quinones*,
  511 F.3d 289 (2d Cir. 2007)...................................................................................................6

*United States v. Runner*,
  No. 18-CR-0578 (JS), 2023 WL 3092915 (E.D.N.Y. Apr. 26, 2023) .............................12, 15

*United States v. Scott*,
  677 F.3d 72 (2d Cir. 2012)................................................................................11, 16, 20, 21

*United States v. Smothers*,
  652 F. Supp. 3d 271 (E.D.N.Y. 2023) ..................................................................................19

*United States v. Ulbricht*,
  79 F. Supp. 3d 466 (S.D.N.Y. 2015)................................................................................11, 21

Page(s)

*United States v. Unruh,*
   855 F.2d 1363 (9th Cir. 1987) ................................................................8

*United States v. Zhong,*
   26 F.4th 536 (2d Cir. 2022) ............................................................1, 10

**Other Authorities**

1 McCormick On Evid. § 33 (9th ed.) ...........................................................7

Fed. R. Evid. 401 ........................................................................................18

Fed. R. Evid. 403 ................................................................................ *passim*

Fed. R. Evid. 404 ................................................................................ *passim*

Fed. R. Evid. 608(a) .....................................................................................6

Adam Kaplan respectfully submits this memorandum of law in opposition to the government's motions *in limine*.  To streamline the briefing submitted to the Court, Adam Kaplan hereby incorporates by reference the arguments made in Daniel Kaplan's opposition (the "D. Kaplan Opposition") to the government's motions to the extent applicable to him.[1]

## PRELIMINARY STATEMENT

For years, the government has insisted that it has an "overwhelming" case against Adam and Daniel Kaplan.  It does so most recently in its motions *in limine*, asserting that "the evidence will overwhelmingly establish" the alleged schemes.  (ECF No. 253 at 18; *see also* ECF No. 6 at 4; ECF No. 135 at 9.)  Yet, despite its claims of "overwhelming" evidence, the government seeks to offer additional evidence of uncharged conduct.  No matter the exceptions into which the government attempts to shoehorn such evidence, however, this evidence is merely inadmissible "propensity evidence in sheep's clothing," *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022), which must be excluded for the reasons set forth below.  Moreover, the admissibility of the evidence will depend on the particular evidence the government ultimately seeks to offer at trial (which is not disclosed in the government's motions) and thus the government's effort to obtain a ruling that admits broad, vaguely defined categories of evidence should be rejected.  In contrast to the broad rulings the government seeks to obtain for itself, its motions seek to unfairly hamper the Kaplans' ability to mount a defense by narrowing the theories that can be presented at trial, restrain the defense's ability to impeach witnesses with FBI interview notes, and require the defense to make disclosures earlier than is practicable, particularly given the voluminous,

---

[1] Emphasis added to, internal citations, brackets, and quotation marks, and subsequent history are omitted from quotations and citations throughout this brief, unless otherwise indicated.  All references to the "Rules" are to the Federal Rules of Evidence.

ongoing production of 3500 material.  These requests must also be denied or modified as discussed below and in the D. Kaplan Opposition.

*First*, the government's motion regarding the admissibility of litigation brought by the Securities and Exchange Commission (the "SEC") and certain private parties should be denied because evidence of these proceedings would be unduly prejudicial.  Regarding two of the civil proceedings, the government openly admits that it would only introduce such evidence on direct examination to head off an anticipated line of impeachment questioning by the defense.  Bolstering a witness's credibility is not a proper purpose of direct examination—that is what re-direct examination is for.  Moreover, the admissibility of such evidence turns, in large part, on the specific evidence that the government seeks to introduce at trial and how the government will seek to use that evidence at trial (Will it only seek to introduce the fact of the proceeding?  Will it seek to introduce the underlying allegations?  Will it seek to introduce that there has been no finding of liability in those cases?).  The government's brief does not address any of this— another basis for denying the government's motion.

*Second*, evidence of letters from clients that the Kaplans allegedly solicited or allegedly forged during the course of their contentious departure from Merrill Lynch is inadmissible under Rule 404(b) because such evidence is not sufficiently similar to the charged conduct to prove "knowledge, intent, preparation, plan and absence of mistake" or modus operandi.  As for other evidence relating to the Kaplans' separations from Morgan Stanley and Merrill Lynch, the government does not even attempt to define the scope of the additional evidence or identify any permissible use (nor is there one under Rule 404(b)).  Moreover, any minimal probative value of such evidence would be substantially outweighed by the risk of unfair prejudice.  For example, rebutting these allegations would require holding a mini-trial on complex and entirely collateral

issues, such as the basis for the Kaplans' separations from Morgan Stanley and Merrill Lynch, how the alleged "campaign" of letters sought to address those concerns and which (if any) of the "dozens of letters" were forged. Moreover, even if that mini-trial resolves these issues, there is a high risk that a jury would confuse the high volume of letters (each of which the government appears to contend was improper in some way) as evidence that the Kaplans had the propensity to engage in wrongdoing.

*Third*, evidence regarding alleged misrepresentations the Kaplans made about their educational and professional background is not admissible as direct evidence or under Rule 404(b) where the alleged misrepresentations do not constitute fraudulent misstatements or omissions and are not relevant to the transaction-based misrepresentations on which the charges are based. Instead, these alleged misstatements and omissions boil down to classic propensity evidence prohibited by Rule 404(b). This evidence also raises the same concerns identified above about unfair prejudice and unnecessary mini-trials. If the government raises the Kaplans' educational and professional history at trial, evidence will need to be introduced addressing the precise nature and context of the alleged misstatements and omissions. And, even if the jury determines that there were misrepresentations, any probative value would be outweighed by the risk of unfair prejudice because these purported misrepresentations have nothing to do with the alleged misrepresentations underlying the charges here.

*Fourth*, regarding evidence of Adam Kaplan's initial release and his bond conditions, the government has not provided sufficient detail regarding the nature or scope of the evidence it intends to introduce on this topic. As a result, we respectfully submit that the Court should defer ruling on it until trial. Alternatively, we ask that the Court limit the government's ability to

introduce evidence of Adam Kaplan's bond conditions to the three conditions identified by the government in its brief.  (ECF No. 253 at 14-15.)

*Fifth*, we respectfully request that the Court direct the government not to reference any of the disputed evidence in its opening statement, given the substantial risk of unfair prejudice.

*Finally*, we incorporate by reference the arguments set forth in the D. Kaplan Opposition to the extent applicable to Adam Kaplan, in particular, the arguments responding to Sections V-IX of the government's motions.

## ARGUMENT

## I.    EVIDENCE OF THE CIVIL PROCEEDINGS SHOULD BE EXCLUDED.

The government seeks a ruling on the admissibility of evidence of the civil enforcement action brought against Adam and Daniel Kaplan by the SEC (the "SEC Action"), civil lawsuits brought against them by former clients in New York State Supreme Court in Nassau County (the "Sherrock Lawsuit") and in New York County (the "Tsukerman Lawsuit"), and an arbitration filed against ██████████████████████ by other former clients (the "Newman Arbitration" and together with the SEC Action, the Sherrock Lawsuit, and the Tsukerman Lawsuit, the "Civil Proceedings").  (ECF No. 253 at 2-7.)  We respectfully submit that the Court should deny the government's motion at this stage because (1) evidence of the civil proceedings is unduly prejudicial; (2) with respect to the Tsukerman Lawsuit and the Newman Arbitration, the government seeks to impermissibly bolster a witness's credibility; and (3) the government's motion is vague and premature.

### A.    Evidence of the Civil Proceedings Should be Excluded Under Rule 403.

As discussed in Daniel Kaplan's motions *in limine* (ECF No. 254 at 13), evidence of the Civil Proceedings raises concerns of unfair prejudice, confusion of the issues, and misleading the

jury because there has been no finding or admission of liability on the part of Adam or Daniel Kaplan in any of those proceedings. The Civil Proceedings have not progressed past their early stages. The SEC Action has been stayed pending the resolution of this case. *See* Order, *S.E.C. v. Adam A. Kaplan and Daniel E. Kaplan*, No. 23-CV-1648 (JMA) (ARL), ECF No. 63 (E.D.N.Y. Oct. 31, 2023). The plaintiffs in the Sherrock Lawsuit have not served a copy of the complaint on the Kaplans. Order, █████████████████████████████████████████████████████ █████████████████████████████████, NYSCEF No. 24 (N.Y. Sup. Ct. Aug. 28, 2023) (order denying plaintiffs' motion to direct an alternative method of service). And when the plaintiffs in the Sherrock Lawsuit were compelled to proceed through arbitration, they only filed claims against ████ not the Kaplans. The Tsukerman Lawsuit was dismissed for lack of proper service and was not refiled. *See* Decision and Order on Motion, *Mark Tsukerman v. Adam S. Kaplan and Daniel E. Kaplan*, No. 651398/2023, NYSCEF No. 43 (N.Y. Sup. Ct. Dec. 19, 2024). And the claimants in the Newman Arbitration did not pursue any potential claims against the Kaplans and instead only pursued claims against ████ However, references to multiple civil proceedings commenced against Adam and Daniel Kaplan may give jurors the incorrect impression that the existence of those proceedings is evidence that they engaged in widespread misconduct or have previously been found liable for the same conduct at issue here and thus may "lure" the jurors "into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *cf. United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016) (precluding cross-examination of government witnesses about prior civil lawsuits because "[t]he Court does not consider the existence of a complaint containing unproven allegations . . . probative of the witness' truthfulness"); *Saldarriaga v. United States*, No. 99-CV-4487 (WK), 2002 WL 449651,

at *4 (S.D.N.Y. Mar. 21, 2002) ("Unsubstantiated civil rights allegations made against [a detective] . . . have no bearing on his character for truthfulness.").

### B.    The Government Seeks to Use the Tsukerman Lawsuit and Newman Arbitration to Impermissibly Bolster a Witness.

The government's motion should be denied because it seeks to give the government the opportunity to bolster a witness's credibility before it has even been impeached.  With respect to the Tsukerman Lawsuit or the Newman Arbitration, the government admits that its only purpose in seeking to introduce evidence of these proceedings in direct examination is to head off the impeachment it anticipates the defense may undertake on cross-examination.  (ECF No. 253 at 7 ("The government anticipates that the defense will seek to raise the actions on cross-examination of these witnesses to try and establish a possible bias and undermine their credibility.  Thus, unless the defendants represent that they will not pursue that line of questioning, the government intends to address the lawsuits with the witnesses before cross-examination.").)  But the defense has not heard the direct testimony yet and thus of course does not know if it will use these proceedings to impeach witnesses (and, even if it does, such cross-examination may be more limited than the evidence the government seeks to introduce on direct examination).  Allowing the government to engage in preemptive questioning based on what it *thinks* the defense's cross-examination may be would constitute impermissible bolstering of a witness's character for truthfulness before it has been attacked.  *See* Fed. R. Evid. 608(a) ("[E]vidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."); *United States v. Bodnar*, 37 F.4th 833, 844 (2d Cir. 2022) (to avoid violating Rule 608(a)'s prohibition on impermissible bolstering, "the government may not introduce the [cooperation] agreement into evidence until the defense has challenged the witness's credibility on cross examination); *United States v. Quinones*, 511 F.3d 289, 312–13 (2d Cir. 2007) ("[I]t is well-

settled that, absent an attack on the veracity of a witness, no evidence to bolster his credibility is admissible[.]"); *see also* 1 McCormick On Evid. § 33 (9th ed.) ("[A]s a general proposition, bolstering evidence is inadmissible. . . . [T]he witness's proponent must ordinarily hold information favorable to the witness's credibility in reserve for rehabilitation on redirect or the next stage of the case.").  To the extent the government wishes to counter whatever impeachment evidence the defense may seek to introduce (which the defense will not be able to determine until it hears the witness's testimony on direct), the government must first wait for the defense to attack a witness's credibility and only then may attempt to rehabilitate the witness during re-direct examination.

### C.    The Government Does Not Sufficiently Disclose the Evidence.

The government's motion does not specify the type of evidence that it will seek to introduce regarding the Civil Proceedings.  Does the government intend to elicit witness testimony simply stating that the Civil Proceedings were filed?  Does it intend to attempt to introduce into evidence the pleadings that commenced the proceedings?  Does it intend to introduce the fact that the SEC Action has been stayed?  Does it intend to introduce the fact that the Kaplans have not had the opportunity to challenge the evidence underlying the claims through discovery, summary judgment motions, or trial?  We do not know.  Depending on the nature of the evidence, evidence on this topic potentially raises hearsay issues, in addition to the Rule 403 issues noted above.  *See United States v. Klein*, No. 16-CR-442 (JMA), 2017 WL 1316999, at *10 (E.D.N.Y. Feb. 10, 2017) ("[E]vidence concerning the SEC complaint or charging decision is inadmissible hearsay and, even if it did fall within an exception to or exclusion from the hearsay rule, it would present a danger of unfair prejudice and confusion that would substantially outweigh any probative value."); *S.E.C. v. Badian*, 822 F. Supp. 2d 352, 366

(S.D.N.Y. 2011) (excluding evidence of prior criminal complaint against defendant based on same alleged conduct because probative value of existence of complaint was "slight" and potential for unfair prejudice was "high, as it would likely lead the jury to make improper propensity inferences about [defendant] and could lead the jury to confuse the allegations in the criminal Complaint with the allegations in the instant case[.]").[2]  But there is no way for the defense and the Court to identify and consider these potential issues based on the government's scant proffer.

For the reasons discussed above, the Court should deny the government's motions regarding the admissibility of the Civil Proceedings.  If the Court is inclined not to preclude the government from introducing this evidence at this time, we respectfully request that the Court order the following safeguards to protect against any risk of unfair prejudice, confusion of the issues or misleading the jury:

- The government shall refrain from referencing the Civil Proceedings in its opening statement before the Court has been provided with the information necessary to fully consider these issues.

- The government shall provide, outside the presence of the jury, a more specific proffer of the evidence it intends to introduce regarding the Civil Proceedings the day before any relevant witness will testify, so that the defense may consider the proffered evidence and raise any objections, and the Court may rule on such objections.

---

[2] The government citations to *United States v. Kordel* and *United States v. Unruh* are inapposite.  The issue in both cases was whether it was improper to depose or solicit interrogatory responses from a defendant in a civil proceeding where there was also a criminal case against the defendant—not whether introduction of the existence of such civil proceeding at trial was probative of the charges against the defendant or presented a risk of unfair prejudice.  *See United States v. Kordel*, 397 U.S. 1, 12-13 (1970) (considering whether defendants' convictions should be overturned in light of the government's use of interrogatories in civil proceeding to obtain information from defendant); *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987) (considering defendant's claim that the indictment must be dismissed because his criminal case was prejudiced by testimony he gave in parallel civil proceedings).  And *United States v. Johnson*, 262 F.R.D. 410 (D. Del. 2009), also cited by the government, potentially supports excluding evidence of the Civil Proceedings here depending on the nature of the evidence the government seeks to introduce.  In *Johnson*, the court held that a SEC complaint was not admissible as "permitting the jury to be exposed to the list of civil offenses charged by the Civil Complaint is unduly prejudicial as they are not the same offenses that are charged criminally."  *See* 262 F.R.D. at 419-420.

- With respect to the Tsukerman Lawsuit and the Newman Arbitration, the government shall not seek to introduce evidence of those proceedings unless and until the defense first uses such proceedings to impeach a witness.

- If the Court permits the government to present any evidence regarding the Civil Proceedings to the jury, the Court first issue a limiting instruction that states, at a minimum, that (1) the filing of a civil proceeding is not evidence of either defendant's liability for civil or criminal charges; (2) the Kaplans have not had the opportunity to test the allegations through discovery, summary judgment motions, or trial; and (3) neither proceeding has resulted in a finding or admission of liability by either defendant.[3]

## II.    EVIDENCE OF THE KAPLANS' SEPARATIONS FROM THEIR PRIOR FIRMS AND THE MERRILL LYNCH LETTERS SHOULD BE EXCLUDED.

Prior to being engaged as independent contractors by ███ Adam and Daniel Kaplan worked at Morgan Stanley (from which they voluntarily resigned in June 2017) and Merrill Lynch (from which they departed in March 2018). (ECF No. 253 at 7.) In connection with their departure from Merril Lynch, the government seeks to introduce evidence that (1) the Kaplans "asked victim witnesses to sign forms attesting that the defendants had engaged in no wrongdoing at" Merrill Lynch, and (2) "some victims had no knowledge of these letters, yet they were still submitted with victim signatures that the defendants forged." (*Id.* at 8.) The government also appears to seek to introduce evidence generally concerning the Kaplans' separations from Morgan Stanley and Merrill Lynch. (ECF No. 253 at 7 ("The Defendants' Prior Terminations and Evidence of Such Terminations are Admissible").) As the government acknowledges, the conduct charged in the Superseding Indictment was separate and apart from defendants' separations from Morgan Stanley and Merrill Lynch, and thus their separations and the Merrill Lynch letters are not direct evidence of, the crimes charged. (ECF No. 253 at 7.) *See also United States v. Kahale*, 789 F. Supp. 2d 359, 385 (E.D.N.Y. 2009) (evidence of other

---

[3] The defense respectfully reserves the right to request additions or modifications to this limiting instruction based on the evidence that the parties seek to introduce at trial.

business dealings between defendant and victim, while "indicative of some type of ongoing relationship," was not direct evidence).

The government nevertheless seeks to introduce evidence of the Kaplans' alleged solicitation and alleged forging of letters from their Merrill Lynch clients as evidence of "Adam Kaplan's modus operandi" and the Kaplans' "knowledge, intent, preparation, plan and absence of mistake pursuant to Rule 404(b)." (ECF No. 253 at 9-10.) The government also seeks to introduce evidence of the circumstances surrounding the Kaplans' separations from Morgan Stanley and Merrill Lynch generally, though it is unclear what the government's purported basis is for introducing such evidence. These are merely attempts to introduce "propensity evidence in sheep's clothing," *i.e.*, the government plainly seeks to show that the Kaplans allegedly solicited or allegedly forged letters in connection with their prior employment and thus must have committed similar acts here. *Zhong*, 26 F.4th at 551 (reversing convictions based on improper admission of other act evidence). This is precisely the type of evidence Rule 404 prohibits. Moreover, such evidence should be excluded under Rule 403 because its admission would require lengthy mini-trials on collateral issues that would risk confusing the jury and, in any event, the minimal probative value of the evidence (if any) would be substantially outweighed by the risk of unfair prejudice.

### A.    Applicable Law

Rule 404(b) governs the admissibility of evidence of other "[c]rimes, [w]rongs, or [a]cts" that are not charged in the indictment. *See* Fed. R. Evid. 404(b). The rule provides, in relevant part:

> **(1) Prohibited Uses**. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) **Permitted Uses**. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*Id*.  "'Other act' evidence serves a proper purpose" only if "it is not offered to show the defendant's propensity to commit the offense." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011).  To be admissible under Rule 404(b), "other act" evidence must meet three criteria: (1) it must be offered for a proper purpose; (2) it must be relevant to a disputed issue; and (3) pursuant to Rule 403, the probative value of the evidence cannot be substantially outweighed by its potential for unfair prejudice.  *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012). Additionally, at the defendant's request, the district court should give the jury an appropriate limiting instruction.  *Id.*

With regard to the last step of the analysis—the Rule 403 analysis—evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  It is thus proper to exclude relevant evidence under Rule 403 where, among other things, its admission would require "mini-trials" on collateral issues, which "may mislead the jury and lead it to convict [the] defendant for uncharged conduct."  *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (S.D.N.Y. 2015) (in prosecution relating to the defendant's alleged operation of an online marketplace for illicit goods and services, excluding evidence that "may lead to a mini-trial on collateral issues, such as whether or not" certain goods not included in the indictment were in fact contraband); *United States v. Jadusingh*, No. 18-CR-257 (KAM), 2020 WL 207950, at *4 (E.D.N.Y. Jan. 14, 2020) (excluding "other act" evidence that would require exploration of the circumstances of the prior act and "runs the risk of confusing the jury and leading to a mini-trial").

11

**B.**     **Evidence of the Kaplans' Alleged Solicitation of the Letters is Not Admissible for a Permissible Purpose under Rule 404(b).**

The Kaplans' requests to Merrill Lynch clients that they submit letters of support are not sufficiently similar to the alleged acts underlying the charges to be admissible under Rule 404(b). "When evidence of uncharged acts is used to establish intent, knowledge, lack of mistake, common scheme or plan, or *modus operandi,* the proponent must demonstrate the similarity of the charged and uncharged acts." *United States v. Martoma*, No. 12-CR-973 (PGG), 2014 WL 31213, at *4 (S.D.N.Y. Jan. 6, 2014) (finding substantial differences between proffered evidence and charged conduct precluded admission under Rule 404(b)); *cf. United States v. Runner*, No. 18-CR-0578 (JS), 2023 WL 3092915, at *2 (E.D.N.Y. Apr. 26, 2023) (evidence of defendant's mail operation that involved weight-loss/nutritional product mailings was impermissible propensity evidence, where only scheme involving defendant's psychic services mailings was charged). As the Court explained in *Martoma*:

> More specifically, to carry its burden of establishing admissibility, the government must explain the uncharged transactions, identify similarities between the charged and uncharged transactions, and articulate how the similarities identified support an inference of knowledge or intent. Where evidence is offered to establish a common scheme or plan, such evidence must demonstrate either a connected or inseparable transaction or a continuing scheme or conspiracy. To be admissible as proof of *modus operandi,* other act evidence must be so nearly identical in method as to ear-mark the act as the handiwork of the accused.

2014 WL 31213, at *4.

Here, there are significant differences between the alleged solicitation of the letters proffered by the government and the charged acts. The government alleges that, during the course of the Kaplans' departure from Merrill Lynch, they "went on a campaign to get letters of support from their clients," and that "dozens of letters were sent to" Merrill Lynch. (ECF No. 253 at 9.) By contrast, with regard to the wire fraud conspiracy charged in Count One, the

12

government proffers that "one victim" is expected to testify that the victim initially wrote to █████

claiming to have been defrauded, but was later "paid by Adam Kaplan and then allowed Adam

Kaplan to write an email to ████ retracting that the victim had been defrauded by Adam Kaplan."

(*Id.* at 9-10.)  The government does not allege that any of the Merrill Lynch clients complained

that either of the Kaplans had defrauded them prior to the submission of their letter, or that Adam

or Daniel Kaplan later asked them to retract any such complaint.  Nor does the government

allege that the Kaplans offered monetary payments or other consideration to their clients at

Merrill Lynch to incentivize them to submit the letters (as the government seems to suggest

Adam Kaplan allegedly did with respect to the ████ client).  *See Martoma*, 2014 WL 31213, at *5

(other act evidence not admissible in insider trading case where government did not offer

evidence that defendant had a "corrupt relationship" with individual from whom defendant had

previously attempted to elicit information).  Indeed, it is unclear how Adam and Daniel Kaplan's

alleged solicitation of letters could be relevant to proving criminal knowledge, intent, or absence

of mistake because there is nothing illegal about an investment adviser, when faced with

allegations of misconduct, asking his clients to provide information rebutting such allegations.

*See Kahale*, 789 F. Supp. 2d at 385 (where there was no evidence that "other act" transactions

were fraudulent or illegal, "those other transactions cannot logically show [defendant's]

knowledge.").

        The proffered evidence thus is not "so nearly identical in method" to establish a modus

operandi.  Nor, for the same reasons, does it demonstrate their intent, knowledge, or lack of

mistake or a continuing scheme or series of connected transactions or near-identical methods

sufficient to prove plan, preparation, or modus operandi.  Evidence of the alleged solicitation of

letters is thus inadmissible under Rule 404(b).

**C.    Evidence of the Kaplans' Alleged Forgery of the Letters is Not Admissible for a Permissible Purpose under Rule 404(b).**

The alleged forging of client signatures on the Merrill Lynch letters is also insufficient to prove "knowledge, intent, preparation, plan and absence of mistake" or modus operandi.  As the government alleges, and the sampling of letters of support attached to its motions show (ECF Nos. 253-4 to 253-12), the letters were submitted in connection with the Kaplans' departure "from [Merrill Lynch] for conduct involving utilizing client logon credentials to access client accounts." (ECF No. 253 at 7.)  But the forgeries alleged in the Superseding Indictment are of a distinctly different nature.  The alleged forgeries underlying the charged crimes include forged checks from clients' bank accounts (ECF No. 149 ¶ 19) and "fictitious agreements with the Advisory Victims that purportedly authorized the defendants to charge the Advisory Victims' accounts" on which the Kaplans allegedly forged the victims' signatures.  (*Id.* ¶ 23.)  In other words, the charged conduct is alleged to have involved the forging of legal instruments to allegedly withdraw money from client accounts or provide supporting legal documentation to inquiring banks—not allegedly forged letters supporting a financial advisor in a dispute with an adverse employer.[4]

Thus, the forgeries implicated in the charged scheme are not sufficiently similar to the allegedly forged Merrill Lynch letters to prove "knowledge, intent, preparation, plan and absence of mistake" or modus operandi.  Instead, the Merrill Lynch letters are thinly veiled propensity

---

[4] In the government's motions, it proffers that victims will testify that the Kaplans "sent fake communications in their names as part of the scheme here, and that their signatures or emails sent in their names were forged."  (ECF No. 253 at 10.)  This statement is too vague to determine whether these purported communications are sufficiently similar to the Merrill Lynch letters to support admitting evidence of the letters under Rule 404(b).  *See United States v. Motovich*, No. 21-CR-497 (WFK), 2024 WL 3303723, at *14 (E.D.N.Y. July 2, 2024) (reserving judgment on government's motion to admit evidence of alleged witness tampering because motion was "far too vague to allow the Court to determine whether the evidence is admissible under Rule 404(b).").

evidence through which the government would seek to show that because the Kaplans allegedly forged certain of those letters, they must have forged some of the checks and contracts at issue in the charges here. This is precisely the sort of evidence prohibited by Rule 404(b) and must be excluded. *See Runner*, 2023 WL 3092915, at *2-3 ("[A]ssuming arguendo that the uncharged mailings contained false or misleading information, the Court is not convinced that introducing evidence related to a non-psychic services aspect of Defendant's direct mail operation is anything other than impermissible propensity evidence."); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 263 (E.D.N.Y. 2007) (doctor defendant's prior falsification of patient's medical records to avoid malpractice and professional misconduct charges not probative of charges that he altered medical records to obtain insurance payments and thus was inadmissible propensity evidence); *cf. United States v. Motovich*, No. 21-CR-497 (WFK), 2024 WL 3303723, at *15 (E.D.N.Y. July 2, 2024) (excluding evidence of allegedly fabricated identification documents because "the Government does not allege these purportedly fraudulent documents are related to or were utilized in Defendant's allegedly fraudulent criminal schemes").

**D.     Evidence of the Kaplans' Separations from Morgan Stanley and Merrill Lynch is Not Admissible for a Permissible Purpose under Rule 404(b).**

The government's attempt to seek a ruling on the admissibility of the circumstances surrounding the Kaplans' voluntary resignation from Morgan Stanley and departure from Merrill Lynch generally is even weaker as it does not attempt to define the scope of the evidence it would seek to introduce on these topics nor does it proffer any permissible purpose to support admitting such evidence. The only detail the government gives is its allegation that the Kaplans "voluntarily resigned" from Morgan Stanley "after allegations regarding the defendants [sic] failure to adhere to proper procedures in handling two other clients' forms," and departed Merrill Lynch after allegations of "conduct involving utilizing client logon credentials to access client

15

accounts." (ECF No. 253 at 7).  This proffer does not provide sufficient information to determine whether there are adequate similarities between the Kaplans' separations from those two firms and the charged conduct for evidence of their separations to serve a permissible purpose under Rule 404(b).  For example, regarding the Morgan Stanley allegations, the government does not indicate what forms were at issue, what the Kaplans allegedly failed to do with respect to those forms, and whether those alleged failures bear any resemblance to the conduct charged here.  As for the Merrill Lynch allegations, the government does not allege what the Kaplans allegedly used client credentials to do (if anything).  Absent any purported basis, the only conclusion that can be drawn is that the government is seeking to introduce impermissible propensity evidence to suggest to the jury that, since the Kaplans allegedly had issues at Morgan Stanley and Merrill Lynch, the government's allegations about issues the Kaplans had at their subsequent firm, ▮▮, must be true.  This is prohibited by Rule 404.

**E.    Evidence of the Morgan Stanley Resignation, Merrill Lynch Departure, and Merrill Lynch Letters is Inadmissible under Rule 403.**

Even if evidence of the Kaplans' voluntary Morgan Stanley resignation, Merrill Lynch departure, or Merrill Lynch letters were offered for a permissible, non-propensity purpose (which they are not), their "probative value" would be "substantially outweighed" by the risk of unfair prejudice, confusion of the issues, misleading the jury, and wasting time and should be excluded under Rule 403.  *See* Fed. R. Evid. 403; *Scott*, 677 F.3d at 81-82.  Such evidence will require detailed exploration of complex factual issues that are wholly collateral to the rest of the trial and will inevitably confuse the jury and waste time.  For example, if the government is permitted to introduce evidence of the Kaplans' voluntary resignation from Morgan Stanley, the defense will be forced to call multiple affirmative witnesses wholly unrelated to the government's allegations in this case, and to elicit evidence as to the lengthy litigation that followed pertaining to the

Kaplans' successful expungement from their Form U5s of certain language found to be false and defamatory by a unanimous FINRA arbitration panel (with discovery motion and hearing-related costs awarded against Morgan Stanley).  Responding to evidence as to the Kaplans' departure from Merrill Lynch would likewise necessitate a mini-trial on complex, but collateral, issues involving the testimony of another distinct group of witnesses, a different (but equally complex) subsequent litigation history, including a dispute with Merrill Lynch, and an exploration of Merrill Lynch's internal and public statements as to the Kaplans.  As for the Merrill Lynch letters specifically, rebutting the government's theory that it was somehow improper to solicit statements of support from clients, would require holding a mini-trial on, *e.g.*, the circumstances regarding the "alleged conduct utilizing client logon credentials to access client accounts," the purported basis for such allegations, why those allegations prompted the alleged "campaign to get letters of support," and which of the "dozens of letters" submitted were allegedly forged and which were not.  Such a mini-trial would also require an examination of the fact that no regulatory action was taken by FINRA.  *See Jadusingh*, 2020 WL 207950, at *4 (excluding evidence of defendant's prior drug export attempt because it would lead to mini-trial on how she became involved in that attempt).

       Even if, after that lengthy mini-trial, it is determined that the Kaplans acted inappropriately in soliciting the letters or forged any of them (which they did not), any minimal probative value of the evidence would be outweighed by the risk of unfair prejudice.  As discussed above, there is no similarity between the Kaplans' separations from their prior firms or the Merrill Lynch letters and the allegedly solicited email and allegedly forged legal instruments underlying the charges here.  The risk of prejudice is high, particularly where the government alleges that "dozens of letters" from Merrill Lynch clients were submitted, suggesting that each

17

one reflects an instance of wrongdoing.  The volume and nature of allegedly fraudulent letters "may mislead the jury to make a determination of guilt based on propensity."  *Kahale*, 789 F. Supp. 2d at 385–86.  Moreover, such evidence should be unnecessary where the government claims it has evidence that "overwhelmingly" proves the charged conduct.  (ECF No. 253 at 18.)

### III.    EVIDENCE OF ALLEGED STATEMENTS MADE TO CLIENTS REGARDING DEFENDANTS' HARVARD EDUCATION AND PROFESSIONAL BACKGROUND ARE NOT ADMISSIBLE.

The government seeks to introduce Adam and Daniel Kaplan's purported "omissions regarding their terminations from [Merrill Lynch] and [Morgan Stanley]," along with "claims to investors that they attended Harvard University," as "direct evidence" of acts taken in furtherance of the charged conspiracies.  (*Id.* at 10.)  Rather than constituting relevant direct evidence of any of the charged offenses, this evidence is simply further Rule 404(b) uncharged "other act" evidence entirely unrelated to the charged fraudulent conduct.  Moreover, even if such evidence could be deemed relevant to any charged offense or probative of any issue in dispute, its admission would unduly prejudice defendants and create significant jury confusion by requiring extensive mini-trials on collateral issues, such as the specific information allegedly misrepresented or omitted, whether the witness simply misinterpreted an otherwise accurate statement by the Kaplans, and the Kaplans' public disclosures about their education and prior employment.

#### A.    Statements Regarding the Kaplans' Educational and Professional Background Are Not Direct Evidence of the Charged Crimes.

Evidence of statements regarding prior employment evidence and educational background is not relevant, direct evidence of the charged offenses, because such evidence does not make a fact that is of consequence in this action more or less probable.  Fed. R. Evid. 401. The charges here are based on alleged misrepresentations or omissions concerning advisory fees

and the bases for certain transactions on client accounts.  Purported misstatements or omissions about the Kaplans' educational and employment background have no bearing on whether those fee- and transaction-specific misrepresentations and omissions occurred.

The government relies on two RICO cases (*United States v. Diaz* and *United States v. Smothers*) to claim that uncharged bad acts should be admitted as direct evidence here.  (ECF No. 253 at 10-11.)  But as the court in *Smothers* held, "[w]hen a defendant has been charged *with racketeering offenses*, it is well settled that the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise."  652 F. Supp. 3d 271, 283 (E.D.N.Y. 2023).  There are no racketeering charges at issue here; indeed, this is simply not a case involving large criminal organizations where previous convictions may be properly admissible as "direct proof of the existence of a criminal enterprise in which [defendant] participated."  *Smothers*, 652 F. Supp. 3d at 304.

The government's reliance on *Diaz* is further misplaced because there, the Second Circuit held that evidence of uncharged acts could be admitted – if "done in furtherance of the alleged conspiracy" – to inform the jury "how illegal relationships and mutual trust developed *between co-conspirators*."  176 F.3d 52, 79-80 (2d Cir. 1999)[5]; *see also United States v. Nachamie*, 101 F. Supp. 2d 134, 143 (S.D.N.Y. 2000) (reiterating that *Diaz* permitted admission of prior bad acts to explain "how illegal relationships and mutual trust developed between co-conspirators").

Here, the government does not offer evidence to inform the jury how any "illegal relationships and mutual trust developed between co-conspirators."  Rather, the government

---

[5] *Diaz* permitted "testimony of [one defendant's] drug dealing for [another defendant] … because it informed the jury how the Latin Kings' racketeering and drug conspiracies evolved, and how illegal relationships and mutual trust developed between co-conspirators."  *Diaz*, 176 F.3d at 79-80.  The government makes no such argument with respect to alleged co-conspirators here.

contends the alleged bad acts relate to "a sense of trustworthiness amongst the victims," without which "the victims would not have invested their money."  (ECF No. 253 at 11.)  In addition, the government cannot assert that circumstances of defendants' separations from Merrill Lynch or Morgan Stanley – each of which occurred prior to the start of the alleged offenses – could have been "done in furtherance of the alleged conspiracy."

Simply put, the government should not be permitted to introduce, as direct evidence, uncharged acts that bear no relationship to the transaction-specific crimes charged.

### B. Statements Regarding the Kaplans' Educational and Professional Background Are Not Admissible "Other Act" Evidence Under Rule 404(b).

The government's citations to *United States v. Graham* and *United States v. Jackson* illustrate that the proffered evidence is actually just Rule 404 uncharged "other act" evidence dressed up as "direct evidence."  (ECF No. 253 at 11-13.)  Neither decision permitted the introduction of such evidence as direct evidence; and unlike here, each court found the evidence offered for a permissible purpose under Rule 404(b)(2) – *i.e.*, to show intent and knowledge.  *See Graham*, 51 F.4th 67, 82 (2d Cir. 2022) (finding separate "scheme … done at the same time as the charged conspiracy, with the same coconspirators [sic], and with the same hallmarks" was "probative of [defendant's] fraudulent intent" where defendant's "principal defense was that she lacked the requisite mental state"); *Jackson*, 792 F. App'x 849, 853 (2d Cir. 2019) (finding defendant's "prior conviction for inflating appraisal values … relevant to show that he was familiar with loan structuring and other transactions" where defendant argued "he did not understand" transactions).

Evidence of defendants' representations concerning their educational and employment history, however, cannot be admitted pursuant to Rule 404(b) because they are not to be relevant to any "issue *in dispute*" concerning the transaction-based alleged misrepresentations.  *Scott*, 677

F.3d at 81 (emphasis in original).  Indeed, since these alleged misrepresentations are not

fraudulent to begin with, they "cannot logically show [the Kaplans'] knowledge." *Kahale*, 789

F. Supp. 2d at 385. There is simply no duty to affirmatively disclose the circumstances of each

separation from every prior employer, and admitting evidence of such circumstances as

somehow relevant to entirely distinct conspiracy charges would produce absurd results.  Indeed,

an individual would be required to disclose the circumstances of every prior instance in which he

or she left a job on less than amicable terms to avoid facing misrepresentation allegations in

later, unrelated fraud actions.

Any alleged embellishment of the Kaplans' educational and professional history similarly

does not constitute fraud and is irrelevant to the transaction-based conspiracy and fraud offenses

charged.  Indeed, "general positive statements about [an individual's] professional history and

management abilities . . . are at most non-actionable puffery." *Barilli v. Sky Solar Holdings,

Ltd.*, 389 F.Supp.3d 232, 252 (S.D.N.Y. 2019); *see also MBIA Ins. Corp. v. Credit Suisse Sec.

(USA) LLC*, 32 Misc.3d 758, 773 (N.Y. Sup. Ct. 2011) (holding that "allegations about [a

defendant's] pedigree and … track record" are mere "puffery," and even where "relied upon as a

prediction of the Trust's performance, is not fraud").  Thus, the government's claim that "the

Kaplans regularly lied about their Harvard educations and their employment at" Morgan Stanley

and Merrill Lynch (ECF No. 253 at 12) would only tend to impermissibly "show the defendant's

propensity to commit the offense."  *Curley*, 639 F.3d at 57.

### C.    Statements Regarding the Kaplans' Educational and Professional Background Should be Excluded Under Rule 403.

The evidence the government seeks to introduce would result in unfair prejudice, undue

delay, confusion of the issues, and misleading the jury because it would result in a mini-trial on

these collateral educational and employment issues.  *See Ulbricht*, 79 F. Supp. 3d at 492–93;

21

*Jadusingh*, 2020 WL 207950, at *4; Fed. R. Evid. 403.  The government focuses only on whether inflammatory evidence will unfairly prejudice defendants; in so doing, it fails to acknowledge the extensive mini-trial that will be required – and the attendant delay, distraction, and jury confusion – to delve into the circumstances of each defendant's separations from two firms, as well as the precise characterization of their attendance at Harvard.

If the Kaplans' employment at Morgan Stanley and Merrill Lynch is introduced at trial, it will be necessary for the defense to introduce evidence pertaining to the nature of the issues that prompted the Kaplans' separations, whether those issues were legitimate, and the subsequent legal proceedings.  For example, the U5 forms initially disclosed by Morgan Stanley after Adam and Daniel Kaplan's voluntary resignations included language regarding their conduct that the Kaplans were ultimately successful in having expunged from the U5 forms through a FINRA arbitration, because Morgan Stanley's statements were unanimously found to be false and defamatory.  If the government's motion were granted, the defense would need to introduce evidence of this arbitration and its outcome to rebut the allegation that they engaged in wrongdoing at Morgan Stanley that they were obligated to disclose to clients.

As for the Kaplans' educational history, they took courses as part of a post-baccalaureate program at Harvard.  If alleged misrepresentations about their education at Harvard are put at issue in trial, the defense will need to inquire in detail into the precise nature of witnesses' understanding of the Kaplans' affiliation with Harvard, the bases of that understanding (*e.g.*, was it based on alleged statements by the Kaplans, other individuals, or the fact that they simply met the Kaplans at Harvard-affiliated clubs), and whether the Kaplans elsewhere accurately disclosed the status of their Harvard education (*e.g.*, in both public-facing materials and disclosures

provided to clients), which would rebut an inference that the Kaplans intended to mislead

investors with regard to their education.[6]

Accordingly, the unfair prejudice that would result from such a trial within a trial and the

risk that the jury may impermissibly conclude that defendants had the propensity to commit

fraudulent acts generally outweigh any potential probative value of the proffered evidence,

warranting preclusion under Rule 403.[7]

## IV. THE COURT SHOULD DEFER RULING ON THE ADMISSION OF ADAM KAPLAN'S INITIAL RELEASE AND BOND CONDITIONS.

As with several of the government's other motions *in limine*, its motion for a ruling that

evidence establishing Adam Kaplan's initial release on bond and the conditions of his release is

vague and premature as the government does not disclose sufficient detail about the evidence it

intends to seek to introduce at trial.  Accordingly, we respectfully submit that it would be

appropriate for the Court to defer ruling on these issues until the government identifies the

evidence it will seek to introduce at trial on this topic.  *See, e.g. United States v. Klein*, No. 16-

CR-422 (JMA), 2017 WL 839765, at *1 (E.D.N.Y. Mar. 1, 2017) (deferring ruling on

admissibility where it will "turn on the manner in which the trial progresses and, without

knowing the precise context in which [defendant] will seek to introduce the statements, the Court

is unable to determine their admissibility.").

---

[6] The government does not specify the purported misrepresentations regarding the Kaplans' association with Harvard, and the 3500 material is equally ambiguous as witnesses apparently have differing understandings of the defendants' affiliation.

[7] As discussed in the D. Kaplan Opposition, if evidence of the Kaplans' alleged misstatements and omissions regarding their educational and professional history are admitted into evidence, then evidence of the Kaplans carrying out their roles as investment advisers and the positive performance of some of their investments should likewise be admitted as such evidence would be relevant to rebutting the government's improper attempt to suggest that the Kaplans are habitual fraudsters and thus must have committed the fraud here or that the Kaplans did not earn the fees they received.

If the Court is inclined to rule on the admissibility of Mr. Kaplan's initial release and bail conditions at this juncture, the defense requests that the Court limit any evidence of Mr. Kaplan's bail conditions to the three conditions referenced by the government in its brief: (1) the defendant must not commit a federal, state or local crime while on release; (2) the defendant must not have any contact with victims or witnesses; and (3) the defendant must refrain from employment pertaining to investment advisement.  (*See* ECF No. 15; ECF No. 253 at 14-15.) Any other bail conditions are irrelevant, potentially prejudicial (for example, the amount of the bond posted), and may raise potential privacy concerns (as in the case of the identities of the bond sureties).  Moreover, to the extent any evidence of Mr. Kaplan's bail conditions is introduced at trial, such evidence should strictly conform to the actual bail conditions imposed.[8]

## V.    THE GOVERNMENT SHOULD BE PRECLUDED FROM REFERENCING PREJUDICAL EVIDENCE IN ITS OPENING STATEMENT, AND THE DEFENSE RESERVES THE RIGHT TO SEEK LIMITING INSTRUCTIONS.

Given the prejudicial nature of the evidence discussed herein, which also potentially raises hearsay issues, the Court should direct the government not to raise the Civil Proceedings, the Kaplans' separations from Morgan Stanley or Merrill Lynch, the Merrill Lynch letters, or the alleged misrepresentations concerning defendants' educational and employment history in its opening statement.  The defense also reserves all rights to seek appropriate limiting instructions. *See United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (noting district court provided "thorough and carefully worded limiting instruction" to minimize prejudice even where "[t]he government did not place any improper emphasis on the prior conviction," "it did not attempt to argue propensity," and "used the conviction only to argue defendant's knowledge").

---

[8] For example, the government inaccurately describes one of the bail conditions as a prohibition from "employment as an investment or financial advisor" (ECF No. 253 at 14-15), whereas the actual bail order directs Adam Kaplan to "[r]efrain from employment pertaining to investment advisement" (which he did).  (ECF No. 15 at 1.)

## VI.    ADOPTION OF ARGUMENTS IN THE D. KAPLAN OPPOSITION

As noted above, Adam Kaplan incorporates by reference the arguments set forth in the D. Kaplan Opposition to the extent applicable to him, in particular the arguments responding to Sections V-IX of the government's motions *in limine*.

### CONCLUSION

For the reasons set forth above and in the D. Kaplan Opposition, the government's motions *in limine* should be denied or, alternatively, limited as discussed above.  Further, Adam Kaplan respectfully reserves the right to make additional objections at trial, as well as to move for further *in limine* rulings based on subsequent disclosures by the government.

Dated:  August 25, 2025
New York, New York

Respectfully submitted,

*/s/ Mark S. Cohen*
Mark S. Cohen
S. Gale Dick
Drew S. Dean
Daniel Joiner
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, NY 10022
(212) 957-7600
mcohen@cohengresser.com
sgdick@cohengresser.com
ddean@cohengresser.com
djoiner@cohengresser.com

*Attorneys for Adam Kaplan*