UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

---------------------------------------------------------------------X
UNITED STATES OF AMERICA,

Plaintiff,

-against-

**MEMORANDUM & ORDER**
23-cr-00293 (JMA)

ADAM KAPLAN and DANIEL KAPLAN,

Defendants.
---------------------------------------------------------------------X

**AZRACK, United States District Judge:**

On November 13, 2025, a jury in the Eastern District of New York returned a guilty verdict against Daniel Kaplan and Adam Kaplan (together, "Defendants") on a 16-count indictment that charged them with conspiracy to commit wire fraud, wire fraud, investment advisor fraud, and money laundering. Before the Court is a motion by Defendants to compel discovery in connection with their anticipated post-trial motions pursuant to Federal Rule of Criminal Procedure 33. (ECF No. 436 ("Mot.").) For the reasons that follow, Defendants' motion is DENIED.

## I. BACKGROUND

The Court presumes familiarity with the facts of this case and recites only facts relevant to the present motion.

Between May 2018 and July 2021, Defendants, who are twin brothers, served as investment advisors at a financial services firm. (Superseding Indictment, ECF No. 149.) In July 2021, the firm terminated its independent contractor relationship with Defendants. (Id. ¶ 5.) Approximately one month later, Defendants, who had become aware that they were under investigation by both the Securities and Exchange Commission and the Department of Justice concerning their work with the firm, decided to retain an attorney to represent them in connection with the investigations. (ECF No. 488, Defendants' Mem. in Support of Motion ("Def. Mem.") at

4.) They retained Todd Blanche, then a partner at the law firm then known as Cadwalader, Wickersham, & Taft LLP ("CWT"). (Id.) According to Defendants, "[o]ver the next fifteen months, Mr. Blanche and his team communicated regularly with SEC staff, contacted potential witnesses, developed defense strategy, and communicated with the lead EDNY prosecutors investigating the same conduct." (Id.)

In November 2022, CWT withdrew from the representation after a breakdown in the attorney-client relationship and disputes over billing and non-payment. (Id. at 5; see also ECF No. 21.) In March 2023, the SEC filed a civil lawsuit against Defendants, alleging multiple charges of investment adviser fraud. See SEC v. Kaplan, No. 23-cv-01648 (E.D.N.Y. filed March 3, 2023) ("SEC Action"). In June 2023, Defendants filed a complaint against CWT and against Blanche individually in Nassau County Supreme Court, asserting claims for legal malpractice, breach of fiduciary duty, excessive billing, and related claims.[1] (Def. Mem. at 5–6); see Kaplan v. Cadwalader Wickersham & Taft, LLP, Index No. 609236/2023, NYSCEF No. 1 (Sup. Ct. Nassau Cnty. June 12, 2023) ("State Action").

On July 18, 2023, Defendants were charged in this case with conspiracy to commit wire fraud, wire fraud, investment advisor fraud, and money laundering, in connection with a scheme to defraud at least 50 victims of more than $5 million. (Indictment, ECF No. 1.)

Before the start of the criminal trial, Defendants had repeatedly asked this Court to order CWT to turn over files related to its representation of Defendants, which this Court denied. (See, e.g., ECF No. 229 (Aug. 1, 2025 Order); ECF No. 43 (Oct. 31, 2023 Order affirming Judge Wicks's

[1] In October 2023, this Court stayed the SEC Action pending the completion of the criminal case. See SEC v. Kaplan, No. 23-cv-01648, ECF No. 63 (granting the Government's motion to stay the SEC Action). The State Action proceeded in parallel with the criminal case until March 2026. See Kaplan v. Cadwalader Wickersham & Taft, LLP, Index No. 609236/2023, NYSCEF No. 187 (Mar. 9, 2026 Tr. 18:24–19:11 (staying action pending Defendants' sentencing)).

Sept. 5, 2023 Order).) Subsequently, the government subpoenaed CWT for documents related to its representation of the Defendants. Defendants filed a motion to quash the subpoena, which this Court granted without prejudice on October 9, 2024. (See ECF Nos. 85-90, 123.)

One month earlier, on September 9, 2024, the Government filed a motion to revoke Adam Kaplan's bond. (ECF No. 104.) On September 11, 2024, this Court revoked Adam Kaplan's bond. (ECF Nos. 109, 110.) A few weeks later, at a status conference held on October 9, 2024, the Government indicated that it planned to file a superseding indictment. (See Transcript, 3:4–12, Oct. 9, 2024.)

On February 20, 2025, a grand jury returned a superseding indictment that added an additional count of conspiracy to commit money laundering against both Defendants, and various additional charges against Adam Kaplan, including regarding criminal conduct he committed while released on bond. (Superseding Indictment ¶¶ 41–50.)

In March 2025, Blanche was confirmed as Deputy Attorney General.[2]

As part of their voluminous pretrial motions filed in May 2025, Defendants renewed their request for CWT files. The Government took no position on that request. (ECF No. 198 at 45-46.) In an order dated August 1, 2025, the Court again denied Defendants' request for the CWT files. (ECF No. 229 at 26–32.)

Defendants' trial began on September 22, 2025. Over the ensuing eight weeks, Defendants were represented by teams of able defense counsel that vigorously defended the case and filed numerous motions. As explained further infra, Defendants did not seek any relief with the Court concerning Blanche or seek any discovery concerning Blanche's role at the Justice Department

[2] Blanche served as Deputy Attorney General from March 2025 until April 2026, when he began serving as Acting Attorney General. He was sworn in as Attorney General on August 10, 2026. (Def. Mem. at 7); see also U.S. Dep't of Justice, Meet Attorney General (Aug. 14, 2026), https://www.justice.gov/ag/staff-profile/meet-attorney-general.

until November 9, 2025, after the Government had completed its rebuttal summation. In its response to the Defendants' November 9 letter concerning Blanche, (ECF No. 407), the Government represented, in open court, that "no member of the prosecution team has spoken to Mr. Blanche since he reentered the government about this case in any capacity." (Trial Transcript, 5257:12–14, Nov. 13, 2025.)

On November 13, 2025, the jury announced its verdict, finding both Defendants guilty of conspiracy to commit wire fraud, wire fraud, investment advisor fraud, and money laundering. Adam Kaplan was convicted of all charges against him; Daniel Kaplan was convicted of all but two money laundering counts. (See Verdict Sheet, ECF No. 423.)

On February 6, 2026, Defendants filed the instant motion. (Mot.) The motion, made in anticipation of Defendants' motions for new trials pursuant to Federal Rule of Criminal Procedure Rule 33, seeks discovery "into any communications about this case between the prosecution team or the EDNY U.S. Attorney's office and [Deputy Attorney General Todd Blanche] or his agents; any updates, summaries, or other documents provided to Mr. Blanche or his staff that reference this case; and any documentation of Mr. Blanche's formal recusal or walling-off from this case." (Mot. at 1.) Defendants seek to use this discovery to document a purported conflict of interest, asserting that after Blanche's confirmation as Deputy Attorney General, he had "supervisory authority over the Department of Justice, including the United States Attorney's Office prosecuting his former clients." (Def. Mem. at 7.) Defendants argue that, given Blanche's prior representation of them, discovery about his purported involvement in this case could reveal "evidence that a prosecutorial conflict of interest compromised the fundamental fairness of the trial." (Id. at 1; ECF No. 438 at 2.)

The Government opposes the motion. (ECF No. 437 ("Gov. Opp.").) The Government represents that "no member of the prosecution team has communicated with Mr. Blanche about this case in any capacity since his return to government service, nor has any member of the team received direction from Mr. Blanche or from counsel representing him." (Id.) The Government further contends that Defendants' discovery request should be denied because Defendants have failed to provide "concrete evidence" warranting further discovery, as "the defendants have offered no evidence—because none exists—that Mr. Blanche participated in this investigation, prosecution, or conviction in any way," and "the record establishes that the defendants were indicted, and Adam Kaplan was detained, before Mr. Blanche reentered the government, foreclosing any plausible claim of involvement." (Id. at 2.)

Defendants filed a reply letter on February 23, 2026, (ECF No. 438), and a memorandum of law in further support of their motion on August 6, 2026, (ECF No. 488).[3]

[3] In their original request, Defendants sought "discovery into any communications about this case between the prosecution team or the EDNY U.S. Attorney's office and Mr. Blanche or his agents; any updates, summaries, or other documents provided to Mr. Blanche or his staff that reference this case; and any documentation of Mr. Blanche's formal recusal or walling-off from this case." (Mot. at 1.) In their most recent filing, Defendants ask for eight separate categories of information and documents, which, in addition to what they sought in the original request, includes requests for:

- Documents "reflecting the establishment, scope, implementation, or administration of any ethical screen relating to Adam Kaplan, Daniel Kaplan, or this case" and "identifying when the screening procedures, if any, were implemented and who was subject to them";
- Documents "identifying who, if anyone, exercised supervisory authority over this case in place of Mr. Blanche," as well as "[a]ny delegation memoranda or comparable directives";
- Communications "identif[ying] the scope of the term 'prosecution team' as referenced in the government's November 13, 2025 statement in court and in the government's February 17, 2026 letter submission";
- Communications "between Mr. Blanche, his supporting staff, or his personal attorneys and any DOJ employee concerning Adam Kaplan, Daniel Kaplan, or this case, whether or not that employee was a member of the 'prosecution team'";
- Documents "sufficient to identify whether Mr. Blanche had electronic or physical access to files relating to the investigation or prosecution of this case after commencing service as Deputy Attorney General";
- Documents "reflecting whether Mr. Blanche attended, participated in, or was briefed about meetings, strategy discussions, charging decisions, trial preparation, or post-trial matters involving Adam Kaplan, Daniel Kaplan, or this case"; and
- Documents "reflecting Mr. Blanche's reporting of the Nassau County litigation between the Kaplans and Mr. Blanche as a potential conflict or basis for recusal" and "reflecting the DOJ's consideration of the Nassau County litigation between the Kaplans and Mr. Blanche in evaluating his conflicts or recusal obligations." (Def. Mem. at 27–28.)

## II. Discussion

The Federal Rules of Criminal Procedure provides that "a court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although the standard governing the availability of discovery in connection with a defendant's motion for a new trial pursuant to Rule 33 is "far from settled," some courts "acknowledge that, in certain circumstances, some discovery may be appropriate as part of the post-trial factual development." United States v. Williams, No. 02-cr-01372, 2017 WL 3613661, at *2 (S.D.N.Y. Aug. 21, 2017). Nonetheless, courts agree that, under Rule 33, this Court has broad discretion regarding whether to allow discovery on a post-conviction motion for a new trial. See, e.g., Williams, 2017 WL 3613661, at *2 (S.D.N.Y. Aug. 21, 2017) ("Generally speaking, a district court has broad discretion to fashion discovery mechanisms suitable to the case before it.") (cleaned up); United States v. Forbes, 790 F.3d 403, 411 (2d Cir. 2015) (noting that it reviews "a district court's denial of a post-trial Rule 33 hearing or discovery for abuse of discretion").

"When discussing the applicable standard [for a Rule 33 post-conviction motion for discovery], some courts refer to the standards governing discovery in habeas corpus petitions as an analogous collateral proceeding." Williams, 2017 WL 3613661, at *2 (citing United States v. Velarde, 485 F.3d 553, 559–560 (10th Cir. 2007)). In the habeas context, discovery is available only upon a showing of "good cause" which requires the petitioner to "present specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Pizzuti v. United States, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (cleaned up); see also Gonzalez v. United States, No. 12-cv-5226, 2013 WL 2350434, at *3 (S.D.N.Y. May 23, 2013) (explaining that the good cause standard "requires more than generalized statements regarding the possible existence of discoverable material . . . [and]

does not license a petitioner to engage in a fishing expedition by seeking documents merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.") (cleaned up); Seabrook, 467 F. Supp. 3d at 180 (finding that "the absence of any concrete evidence . . . excludes [the defendant's] motion from the 'rare class of cases' in which discovery in furtherance of a Rule 33 motion is called for") (quoting Velarde, 485 F.3d 553 (10th Cir. 2007)).

The Court will apply that standard, to which Defendants do not object. See, e.g., Williams, 2017 WL 3613661, at *2; Seabrook, 467 F. Supp. 3d at 180 (S.D.N.Y.); (see also Mot. at 2; Def. Mem. at 10–11 (acknowledging that "good cause" is required for a request for discovery in aid of a Rule 33 motion).)

First, the Court, in exercising its discretion, denies Defendants' request for discovery because Defendants did not diligently raise this issue. Prior to the start of trial on September 22, 2025, Defendants never sought, from the Court, any relief or discovery concerning Blanche's purported conflict of interest. Instead, Defendants waited until November 9, 2025—three days after the Government finished its rebuttal summation—to raise this issue with the Court. In Defendants' November 9, 2025 letter, they asserted that Blanche's "involvement in the instant prosecution, however minimal, would constitute a clear conflict of interest and breach of his ethical obligations" and requested that the Court "direct the government to confirm that it has taken adequate steps to ensure Mr. Blanche's non-participation and describe those measures, including the substance, dates, and format of any relevant communications." (ECF No. 407.) In response to this letter, the Government represented in court on November 13, 2025, that "no member of the prosecution team has spoken to Mr. Blanche since he reentered the government about this case in any capacity." (Trial Transcript, 5257:12–14, Nov. 13, 2025.)

Defendants' November 9, 2025 letter asserted that, months ago, they had "raised the government's failure to address what measures it had taken to recuse Mr. Blanche." (ECF No. 407 (citing ECF No. 277 at 21–22).) However, the pretrial filing Defendants cite never requested that the Court order the Government to provide any discovery or information concerning Blanche or asserted that the Court should address this issue before trial could proceed.[4] Defendants never objected, prior to trial, that the trial should not proceed until issues concerning Blanche's conflict were addressed by the Court. Nor did Defendants ever request, through a filing with the Court, any discovery concerning Blanche prior to trial. Instead, Defendants—whose able teams of defense attorneys vigorously litigated countless issues and objections throughout trial—sat on this issue until after the Government had already finished its rebuttal summation. Defendants now seek additional discovery on this issue after trial. The Court will not grant Defendants post-trial discovery into an issue that Defendants were obviously aware of prior to trial and for which they only sought Court intervention, for the first time, after the Government had finished its rebuttal summation. Cf. United States v. McPartland, No. 17-cr-587, 2020 WL 7014275, at *13 (E.D.N.Y.

---

[4] This section of Defendants' August 25, 2025 response to the Government's motion in limine opposed the Government's attempt to authenticate and admit documents produced by the Defendants through testimony from a witness from CWT (not Blanche), arguing that this would impinge on Defendants' Fifth Amendment rights. This section of the brief stated, in passing, that:

> The striking Fifth Amendment concerns surrounding the Blanche Productions—and Blanche's apparent (and inexplicable) failure to raise [objections to SEC subpoenas during his representation of Defendants]—are further exacerbated by the fact that Blanche now helps lead the Department prosecuting his former clients and is adverse to them in active civil litigation related to his conduct as their attorney during the SEC and DOJ investigations. See Adam Kaplan and Daniel Kaplan v. Cadwalader Wickersham & Taft, LLP and Todd Blanche, Index No. 609236/2023, NYSCEF No. 1 (Sup. Ct. Nassau Cnty. June 12, 2023). In his current role, Blanche has access to, and may be involved with decisions regarding, all federal criminal prosecutions. And while any involvement of Blanche would constitute a clear conflict of interest and breach of his ethical obligations, the government has, to date, been silent as to whether or how Blanche has been recused and walled off from this prosecution. See N.Y. Rules of Pro. Conduct r. 1.11(d)(2)(i); U.S. Dep't of Just., Just. Manual § 1-4.010.

(ECF No. 277 at 22 (footnote omitted).) This dispute about the introduction of Cadwalader documents was subsequently resolved when the parties agreed on a stipulation. (See Trial Transcript, 53:25–60:3, Sept. 22, 2025.)

Nov. 27, 2020), aff'd, 81 F.4th 101 (2d Cir. 2023) ("Given that all the evidence underlying Defendants' request for a post-trial hearing was known to them at trial, I find that [the hearing requested by Defendants in their Rule 33 motion] is not warranted here given Defendants' failure to request a hearing on these issues prior to the verdict. Defendants—who were already armed with all of the same evidence that they claim now justifies a hearing—sat on this request for a hearing until after they were convicted at trial.").

Second, Defendants' claim that Blanche's conflict of interest tainted this prosecution are refuted by both the Government's representations and the indisputable timeline of events that led to the charges against Defendants. Defendants were indicted in July 2023, during the prior presidential administration. After Adam Kaplan's bail was revoked, the Government indicated, on October 9, that it expected to file a superseding indictment in the next 30 to 45 days. (See Transcript, 3:4–12, Oct. 9, 2024.) The superseding indictment was then filed in February 2025 regarding additional crimes committed by both Defendants. Blanche did not return to government service until March 2025—after both indictments were filed, and nearly two years after the Defendants were first charged. Because the Defendants were indicted before Blanche's return to Government service, there is no possibility that, as Defendants suggest, their prosecution stems from Blanche's purported "personal animus" toward them. (Mot. at 3.)

The Government has also repeatedly represented that "no member of the prosecution team has communicated with Mr. Blanche about this case in any capacity since his return to government service, nor has any member of the team received direction from Mr. Blanche or from counsel." (Gov. Opp.; see also Trial Transcript, 5257:12–14, Nov. 13, 2025.) The Court accepts the Government's unequivocal representation.

Defendants have failed to show that the discovery they seek would reveal any possibility that their trial was "tainted by impropriety" or that Blanche's former representation of Defendants influenced their investigation, prosecution, or conviction in any way. (Mot. at 3.) Defendants have not provided the Court with any reason to suspect that their trial—which the undersigned presided over and which was conducted with professionalism on all sides—was "tainted by impropriety." (Id.); cf. Wright v. United States, 732 F.2d 1048, 1056 (2d. Cir. 1984) (rejecting the defendant's argument that the prosecutor's purported "special interest . . . in securing [the defendant's indictment" deprived him of due process of law where the defendant was "found guilty beyond a reasonable doubt on ample evidence after a fair trial before an unbiased jury, and reasoning that, "[a]t the very most . . . [the allegations] deprived him of the chance that, with another prosecutor, he might have undeservedly escaped indictment and consequent conviction for crimes of which he was properly found to be guilty.")

Given all the circumstances here, the Court declines Defendants' request for discovery concerning their speculative theories that Blanche has indirectly communicated with the prosecution or indirectly influenced this case. Because Defendants have not made the requisite showing, their request for discovery concerning their conflict of interest claims is denied. See, e.g., Seabrook, 467 F. Supp. 3d at 180 (denying the defendant's request for discovery to investigate alleged perjury by a prosecution witness because his "claims of [the witness's] misconduct were either insufficiently specific, or insufficiently substantiated, or insufficiently tied to relevant time period to convince [the district court] that . . . further investigation would very likely lead to discovery of witness having perjured himself" and holding that the request did not fall into the "'rare class of cases' in which discovery in furtherance of a Rule 33 motion is called for") (quoting Velarde, 485 F.3d 553 (10th Cir. 2007)).

## III. Conclusion

Because Defendants have failed to show good cause supporting their request, the Court finds that post-conviction discovery is not warranted. Accordingly, Defendants' motion is DENIED.

**SO ORDERED.**

Dated: August 28, 2026
Central Islip, New York

/s/ JMA

JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE